Filed 5/15/14  In re Edward T. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re EDWARD T., a Person Coming Under the Juvenile Court Law. | B252447 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>EDWARD T.,<br><br>       Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK85332) |

APPEAL from orders of the Los Angeles County Superior Court. Marguerite Downing, Judge.  Affirmed.


Jamie A. Moran, under appointment by the Court of Appeal, for Appellant.


Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Respondent.

_____

Appellant Edward T., Sr. (Father) appeals from orders to the juvenile dependency court terminating his parental rights over Edward T., Jr.  The sole claim on appeal is that one of the required findings for termination of parental rights, specifically, that it is likely Edward will be adopted (Welf & Inst. Code, § 366.26, subd. (c)(1))[1] is not supported by substantial evidence.  We affirm.

## FACTS

Father and D.M. (Mother) are the parents of two children:  L.T. born in 2010 and Edward born in 2011.  L.T. was previously declared a dependent child of the dependency court in 2011 and is not involved in Father's current appeal.

On May 23, 2012, the Los Angeles Department of Children and Family Services (DCFS) received a referral concerning Edward after Mother and Father had been arrested for burglary.  The investigating officer in the criminal case reported that the parents had confessed to the allegations.  At that time, the family lived with the paternal grandmother, who was found to have outstanding warrants related to traffic offenses.  A case social worker responded to the referral and took Edward into care.[2]  Edward appeared to be in good health and free of any signs of physical neglect or abuse.  DCFS declined to place Edward with the paternal grandmother, due to her outstanding warrants.

When interviewed on May 23, 2012, Father denied problems with drug or alcohol abuse, but did admit being arrested for drug possession in 2011.  He had been submitting to drug testing as a part of his probation, but had missed some tests recently because, he said, he had been in Louisiana tending to his ailing grandmother.[3]  As to the burglary charge, Father admitted to taking a laptop from a neighbor's garage.  He indicated that he did it to get money for his family, and said he regretted his actions.

---

[1]     All further section references are to the Welfare and Institutions Code.

[2]     Edward was seven months old when he was taken into care.  He was detained at the home of a paternal aunt, Ms. R..  Edward's older sister, L.T., was already placed in the aunt's home.

[3]     DCFS later spoke to the grandmother, who denied having been ill.  She stated that Mother and Father were only at her home once during their trip.

On May 29, 2012, DCFS filed a petition on Edward's behalf pursuant to section 300, subdivisions (b) [failure to protect based on allegations of substance abuse] and (j) [sibling abuse based on the same substance abuse allegations], on Edward's behalf. The petition alleged that Father had a history of substance abuse and was a current abuser of opiates and marijuana, and that Father had cared for Edward while under the influence of drugs. The petition alleged that Mother knew about Father's substance abuse, but had failed to protect Edward. The juvenile dependency court ordered Edward to be detained.

On August 13, 2012, the court found the allegations in the petition to be true, and ordered Edward removed from his parents' custody and placed in foster care. The court ordered DCFS to provide family reunification services for both parents and Edward. The court ordered Mother to attend individual counseling and comply with terms of her parole or probation; the court ordered Father to attend a substance abuse program with random testing, attend 12-step meetings with a sponsor, and receive mental health counseling. The court further ordered Father to have supervised visits, and Mother to have overnight visits.

In February 2013, DCFS reported that Edward and his older sister continued to reside with Ms. R., who was providing the children with a stable and safe environment and appropriate care. Neither Edward nor his sister exhibited any developmental delays. Father had not visited with the children in a "few months;" Mother had only visited three times. Neither Mother nor Father had made themselves available to the social worker. In March 2013, DCFS reported that the telephone numbers that Mother and Father had provided were out of order, and that neither parent had provided updated contact information. In September 2013, DCFS reported that Edward and his sister remained in placement with the paternal aunt, and that she had expressed interest in adoption.

On May 16, 2013, the juvenile court terminated the reunification services of both parents regarding Edward. Neither parent appeared for the hearing.

At a hearing on October 15, 2013, the juvenile court terminated parental rights over Edward as to both Mother and Father. At the same time, the court selected adoption as Edward's permanent plan.

## DISCUSSION

Father contends the dependency court's orders terminating his parental rights over Edward must be reversed because the court's finding that it is likely that Edward will be adopted is not supported by substantial evidence. We disagree.

When a claim on appeal implicates the substantial evidence standard of review, we apply well-established rules. Evidence is substantial if it is " ' " 'reasonable, credible, and of solid value.' " ' " (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161-1162.) We may not and do not pass on the credibility of witnesses, resolve conflicts in the evidence or reweigh the evidence. (*Ibid.*) "Instead, we draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*Ibid.*) The ultimate test is whether a reasonable trier of fact could have made a challenged order in light of the whole record. (*In re V.M.* (2010) 191 Cal.App.4th 245, 252.)

Father's arguments on appeal are largely premised on an assertion that the record shows DCFS failed to address legal guardianship in its permanent plan report after the dependency court had ordered the agency to do so. As Father argues in his opening brief on appeal: "Given the statutory preference available to relatives to select guardianship over adoption, the juvenile court should not have found Edward to be adoptable in the absence of sufficient evidence that the paternal aunt had been fully advised of her option [regarding guardianship] and had chosen adoption over guardianship." Father's argument does not persuade us that we must reverse the finding that Edward is likely to be adopted.

Father is correct that the juvenile court's minute order of May 16, 2013, setting the date for the permanent plan hearing, shows that the court ordered DCFS "to address legal guardianship" in the agency's permanent plan report. But Father is incorrect that the record shows as a matter of law that DCFS failed to comply with its obligation under this order. DCFS's report prepared for the section 366.26 hearing in September 2013

4

specifically indicated that Ms. R. wanted to adopt both children, and that she had an understanding of the responsibilities of adoption, and included information explaining Ms. R.'s motivation for seeking adoption/legal guardianship. While the report does not include express language stating that DCFS had explained the issue of guardianship to Ms. R., the inescapable conclusion to be drawn from the DCFS's report, read as a whole, is that Ms. R. was not interested in guardianship, but wanted to establish a family with Edward and his sister, and wanted to provide the type of a stable home and family environment that would ensue from adoption. At the time of the permanent plan hearing itself, the juvenile court received DCFS's report, and found that a permanent plan of adoption was "appropriate" and ordered DCFS to continue with adoption as Edward's permanent plan. The court indicated that the likely date by which adoption would be finalized was December 31, 2014. The facts are sufficient to show that Ms. R. rejected guardianship in favor of adoption, and we are not persuaded that this occurred because Ms. R. was ignorant of the alternative of guardianship.

On the law, Father is slightly off the mark in arguing that the juvenile court erred in finding that Edward would likely be adopted absent evidence showing that a particular person, namely, Ms. R., had chosen adoption over a guardianship. Father jumps a step in arguing for an examination of guardianship issues in the same breath as the issue of the likelihood a child will be adopted. At a section 366.26 hearing, the juvenile court selects and implements a permanent plan for the dependent child and adoption is the preferred permanent plan. (See § 366.26, subd. (b)(1); and see, e.g., *In re Marina S*. (2005) 132 Cal.App.4th 158, 164.) *Before* addressing a selection between adoption (the preferred permanent plan) and guardianship (as an exception), the court must *first* find, by clear and convincing evidence, that it is likely the child will be adopted if parental rights are terminated. (§ 366.26, subd. (c).) To determine whether a child is adoptable, the court focuses on whether the child's age, physical condition, and emotional state will create difficulty in locating a family willing to adopt the child. (See *In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1649 (*Sarah M*.).) In other words, the focus is on the child. Accordingly, it is not required in determining the likelihood of adoption that a child

5

already be in a potential adoptive home or "that there be a proposed adoptive parent 'waiting in the wings.' [Citations]." (*Ibid*.) In short, questions as to the selection between adoption and guardianship come after the initial determination of the likelihood that a child will be adopted.

The juvenile court's finding that a child is likely to be adopted is reviewed under the substantial evidence standard. (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732.) Here, the evidence showed Edward was adoptable because he was just two years old, in good health, and developing normally. Thus, whether or not Ms. R. herself was willing and approved to adopt Edward was not necessary for him to be deemed a child who was likely to be adopted. (*Sarah M., supra*, 22 Cal.App.4th at p. 1649.) In other words, even assuming Ms. R.'s sentiments favored guardianship over adoption, this would not have necessarily precluded the juvenile dependency court from finding that Edward was likely to be adopted as Father argues. Substantial evidence in the record supports a conclusion that there were no impediments to Edward being adopted, and thus supports the juvenile court's finding that he was likely to be adopted.

Once a juvenile court finds that a child is likely to be adopted, it must terminate parental rights and select adoption as the permanent plan unless it finds that one of the exceptions set forth in section 366.26 applies. (§ 366.26, subds. (c)(1)(A) & (B).) Father focuses on the exception in section 366.26, subdivision (c)(1)(A), which, as relevant, provides that guardianship with a caregiver relative is an appropriate alternative to adoption. This guardianship with a relative exception to the preference to adoption is not an element of the underlying prerequisite of a finding that child is likely to be adopted. Father's argument conflates two distinct aspects of the permanent plan hearing. First, the juvenile court must finds the child is likely to be adopted (§ 366.26, subd. (c)(1)), then the court explores statutory exceptions to adoption, for example, guardianship with a relative. (§ 366.26, subd. (c)(l)(A).)

In any event, the record demonstrates that Ms. R.'s adoption home study has been approved, that she has adopted a child before, and that she now wants to adopt siblings Edward and L.T. together. Edward and his sister have an opportunity for permanency together in an adoptive home and we will not disturb the juvenile court's order terminating parental rights on the ground of defect in the finding that Edward is likely to be adopted.

## DISPOSITON

The juvenile dependency court's orders are affirmed.


BIGELOW, P. J.

We concur:


RUBIN, J.


FLIER, J.

7