Filed 3/5/13  In re T.W. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re T.W., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D061960 |
| Plaintiff and Respondent, | (Super. Ct. No. J515074B) |
| v. | |
| L.T. et al., | |
| Defendants and Appellants; | |
| T.W., | |
| Appellant. | |

APPEALS from a judgment of the Superior Court of San Diego County, Richard D. Huffman, Judge.  (Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part and remanded with directions.

L.T. and Timothy W. (together the parents) appeal a juvenile court judgment removing their minor daughter, T.W., from their custody following true findings made on a Welfare and

Institutions Code[1] section 387 supplemental petition. The parents challenge the sufficiency of the evidence to support the court's findings that the previous placement with L.T. was ineffective in protecting T.W., and T.W.'s removal from parental custody was necessary to prevent substantial danger to her. We conclude substantial evidence supports the court's jurisdictional findings and dispositional order as to the section 387 supplemental petition.

T.W. also appeals, contending the court erred by granting L.T. six more months of reunification services because the services she already received exceeded the statutory limit of section 361.5. We conclude the time limits for services set forth in section 361.5 did not become operable until T.W. was removed from the custody of both parents at a disposition hearing on the section 387 petition. Because the parents have now used up some of their entitlement to services under section 361.5, we remand the matter to have the juvenile court determine whether to continue or terminate their services under current circumstances.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2009, the San Diego County Health and Human Services Agency (Agency) filed a petition in the juvenile court under section 300, subdivision (j), alleging four-year-old T.W. was at substantial risk of harm because L.T. had subjected T.W.'s sister, Olivia J., to serious physical harm and excessive discipline in T.W.'s presence. The court detained T.W. with Timothy. At a jurisdiction and disposition hearing in October 2009, the court declared T.W. a dependent, removed her from L.T.'s custody and placed her with Timothy. The court ordered the parents to participate in services consistent with their case plans.

_____

[1]    Statutory references are to the Welfare and Institutions Code.

During the next 12 months, L.T. completed a parenting education program that was not court approved, and 10 weeks of a 12-week anger management program. The court ordered six more months of services for the parents, and amended L.T.'s case plan to include an assessment by a substance abuse specialist because she had recently tested positive for amphetamine and methamphetamine.

In July 2011, 15-year-old Olivia disclosed that Timothy, her stepfather, had molested her when she was 11 years old and continued to molest her until she was 14 years old. Agency filed a section 342 subsequent petition, alleging T.W. was at risk of being sexually abused by Timothy because he had sexually abused Olivia. T.W. was detained first in foster care and then with her adult sister. In October 2011, the court sustained the allegations of the subsequent petition, placed T.W. with L.T. and ordered supervised visits for Timothy.

Several months later, social worker Angela Gaynor received information that Timothy was living with L.T. and T.W. Gaynor reminded L.T. that Timothy could not be in her home and L.T. could not supervise visits between Timothy and T.W. Timothy admitted he continued to go to L.T.'s home but denied staying overnight. He refused to participate in sexual abuse treatment as required by his case plan, saying he was "not a predator" and the requirement was "stupid." Gaynor reported that L.T. continued to show poor judgment and repeatedly placed T.W. at risk by allowing Timothy in her home. Risk factors included T.W.'s young age and vulnerability, Timothy's sexual abuse of Olivia when she was younger and lived with L.T., Timothy's refusal to obtain treatment, and L.T.'s refusal to participate in therapy. Consequently, Agency filed a section 387 supplemental petition, alleging T.W.'s placement with L.T. had not been effective in protecting T.W. The parents declined Agency's offer of services to prevent T.W.'s removal from L.T.'s custody.

At a detention hearing on March 6, 2012, the court made a prima facie finding on the section 387 supplemental petition and found Agency had made reasonable efforts to prevent or eliminate the need to remove T.W. from L.T.'s custody. The court detained T.W. in out-of-home care.

Gaynor recommended six more months of services for L.T. to give her the opportunity to recognize the signs and red flags of sexual abuse, and to understand the dynamics of sexual abuse and the role she plays in protecting her children. Gaynor said services would enable L.T. to empathize with her children and discuss how she would prevent further incidents of sexual abuse. Services for Timothy would help him identify his triggers for sexual abuse, change his patterns of sexual behavior and develop a relapse prevention plan. Gaynor could not recommend placing T.W. with L.T. because she had violated the court's visitation order by allowing Timothy to visit T.W. in her home and she only recently began participating in services. Further, Gaynor was concerned that L.T. would allow Timothy to live with her because he was homeless.

The court held a contested jurisdiction and disposition hearing on May 4, 2012. Gaynor testified T.W. would be at risk if returned to L.T.'s custody because L.T. had participated in only three therapy sessions and refused to drug test twice, Timothy was still untreated for sexual abuse, and L.T. did not fully understand the dynamics of sexual abuse. Also, the parents had violated the court's visitation order on several occasions. Gaynor identified two safety threats to T.W.: (1) L.T. had allowed Timothy access to T.W. or had not protected her from the risk of sexual abuse; and (2) L.T. was likely to flee with T.W.

T.W.'s adult sister, L.C., testified she lived with L.T. and was asked to supervise Timothy's visits with T.W. She knew Timothy could not stay in L.T.'s home overnight and

4

T.W. could not be left alone with the parents.  L.C. said she never left T.W. alone with Timothy, and L.T. never supervised visits between T.W. and Timothy.  L.C. testified she supervised eight visits between Timothy and T.W., four of which took place in L.T.'s home.  She denied being told visits could not occur there.

The court received in evidence the stipulated testimony of social worker Rafael Munoz, who was assigned to T.W.'s case from December 2009 to July 2011 when T.W. was placed with Timothy.  Throughout that time, the parents violated the court's orders for supervised visits with T.W.  Munoz did not believe that L.T. would abide by the court's order prohibiting Timothy from being in her home or that she could protect T.W. from Timothy.

After considering the evidence and arguments of counsel, the court sustained the allegations of the section 387 supplemental petition and found reasonable efforts had been made to prevent T.W.'s removal from L.T.'s custody.  The court removed T.W. from parental custody and placed her with a relative.  The court found neither parent was entitled to an additional 12 months of services, but under the exceptional circumstances of this case, it was in T.W.'s best interests to order six more months of services for both parents.

DISCUSSION

*The Parents' Appeals*

I

The parents contend the evidence was insufficient to support the court's findings on the section 387 supplemental petition.  They assert there was no evidence Timothy was having unsupervised contact with T.W. in L.T.'s home and, therefore, there was no showing T.W. was at risk of sexual abuse by Timothy.

5

A

A section 387 supplemental petition is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care. (§ 387; Cal. Rules of Court,[2] rule 5.560(c).) In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child. (§ 387, subd. (b); rule 5.565(e)(1).) If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. (Rule 5.565(e)(2); *In re H.G.* (2006) 146 Cal.App.4th 1, 11.) A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1211; *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1200.) The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child. (§ 387, subd. (b); *In re Joel H.*, at p. 1200.)

We review the court's jurisdictional and dispositional findings for substantial evidence. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529; *In re A.O.* (2004) 120 Cal.App.4th 1054, 1061.) Evidence is " '[s]ubstantial' " if it is " 'reasonable, credible, and of solid value.' " (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.) We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding. (*In re*

---

2      Rule references are to the California Rules of Court.

*Casey D.* (1999) 70 Cal.App.4th 38, 52-53; *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)  The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order.  (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

B

Here, the supplemental petition alleged the court's previous order placing T.W. with L.T. had been ineffective in protecting her because L.T. had allowed Timothy to be in T.W.'s home for extended periods after Timothy had sexually abused T.W.'s sister in the family home, and he refused to participate in services for sexual offenders.  The evidence showed L.T. knew Timothy had sexually abused Olivia but still allowed him to spend time with T.W. in her home in violation of Agency's restrictions on supervision.  The social worker admonished the parents on several occasions that Timothy was prohibited from being in the home and L.T. was prohibited from supervising his visits with T.W.  However, Timothy, who was homeless, continued to spend time there.  In the social worker's opinion, Timothy's presence in the home placed T.W. at risk of sexual abuse because she was young and vulnerable, Timothy refused sexual abuse treatment, and L.T. refused to participate in therapy and did not understand the dynamics of sexual abuse or know how to protect T.W.  (See § 300.2; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194-196 [dependency statutes are designed to protect children at risk of harm and thus, the court need not wait until a child is abused to assume jurisdiction].)  The court expressly found the social worker's testimony was credible and we defer to this finding because we have no power to judge the effect, value or weight of the evidence, consider the credibility of witnesses or resolve conflicts in the evidence.  (*In re S.A.*, *supra*, 182 Cal.App.4th at p. 1140.)  Substantial evidence supports the court's jurisdictional findings on the section 387 supplemental petition.

## II

The parents challenge the sufficiency of the evidence to support the court's order removing T.W. from L.T.'s custody. They assert there was no evidence of a substantial danger to T.W.'s health, safety, protection, or physical or emotional well-being if she remained in the home. They further assert Agency should have considered less drastic alternatives to removal from L.T.'s custody.

### A

When a section 387 petition seeks to remove a minor from parental custody, the court applies the procedures and protections of section 361. (*In re Paul E.* (1995) 39 Cal.App.4th 996, 1001-1003.) Before a minor can be removed from the parent's custody, the court must find, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); *In re Javier G.* (2006) 137 Cal.App.4th 453, 462.)

A removal order is proper if it is based on proof of: (1) parental inability to provide proper care for the minor; and (2) potential detriment to the minor if he or she remains with the parent. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60.) The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child. (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 536.)

### B

The record supports a finding L.T. was unable to provide proper care for T.W., and T.W. would be at risk of harm if she remained in L.T.'s custody. (§ 361, subd. (c)(1).) L.T.

8

allowed Timothy to have contact with T.W. in her home, even though she knew he had sexually abused Olivia. She had been repeatedly told that Timothy could not be in her home and she could not supervise visits. L.T. delayed starting therapy, and she did not understand the risk Timothy posed to T.W. Timothy continued to deny sexually abusing Olivia and refused to participate in treatment for sex offenders. Substantial evidence supports the court's finding its previous disposition had not been effective in protecting T.W. from the risk of sexual abuse by Timothy.

## C

Substantial evidence also supports a finding reasonable efforts were made to prevent or eliminate the need for T.W.'s removal from L.T.'s custody. (§ 361, subd. (d).) T.W. became a dependent in 2009 and remained in the custody of one or the other parent for three years under the juvenile court's supervision. The parents consistently ignored the restrictions on visitation, even after being reminded, and did not participate in services as required by their case plans. When Agency filed the section 387 supplemental petition, the parents declined an offer of services to prevent T.W.'s removal from L.T.'s custody. A team decision meeting was held to determine whether T.W. could remain in L.T.'s custody with a safety plan in place. The social worker and her supervisors assessed the risk to T.W. and determined there were no services or precautions available to ensure T.W.'s safety in the home. Thus, Agency did consider less drastic alternatives and used reasonable efforts to prevent T.W.'s removal from L.T.'s custody.

*T.W.'s Appeal*

I

T.W. contends the court erred by ordering six more months of reunification services for L.T.[3] She asserts that at the time of the jurisdiction and disposition hearing on the section 387 supplemental petition, L.T. had already received 31 months of services, which exceeded the section 361.5, subdivision (a), statutory limit. T.W. calculates the length of services beginning with the detention hearing in August 2009, claiming this is when the court originally removed her from L.T.'s custody within the meaning of section 361.5, subdivision (a).

Agency contends the period for reunification services under section 361.5, subdivision (a), began to run only when T.W. was removed from the custody of both parents at the disposition hearing on the section 387 supplemental petition and not when T.W. was detained or initially removed from L.T.'s custody and placed with Timothy. L.T. joins in this contention. Timothy filed a supplemental appellant's brief, claiming he, like L.T., is entitled to reunification services ending 12 months after the date T.W. was removed from both parents' custody.

A

The issue of whether the services the parents received exceeded the statutory limit requires us to consider the interplay between two statutes governing the provision of reunification services: sections 361.2 and 361.5. Because this issue is one of statutory interpretation, we apply a de novo standard of review. (*Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 849 [issues of law and statutory construction are reviewed de novo]; *In*

---

3     T.W. does not make this argument as to Timothy.

*re Alanna A.* (2005) 135 Cal.App.4th 555, 562 [where facts are not disputed, the effect or legal significance of those facts is a question of law to be reviewed de novo].)

B

Sections 361.2 and 361.5 were enacted in 1986 as parts of a single legislative scheme. (*In re Erika W.* (1994) 28 Cal.App.4th 470, 475.) Section 361.5 contains general rules for providing family reunification services to parents of minor children removed from parental custody. (*Ibid.*) "[F]amily reunification services are activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse or exploitation, when the child cannot safely remain at home, and needs temporary foster care, while services are provided to reunite the family." (§ 16501, subd. (h); see *In re A.L.* (2010) 188 Cal.App.4th 138, 145.) The goal of section 361.5 is to promote the return of the child to parental custody. (*In re Ericka W.*, at p. 478.) Reunification services under this statute are mandatory except in certain specified circumstances. (§ 361.5, subds. (a) & (b)(1)-(15); *In re Ericka W.*, at p. 475.)

Section 361.5 includes time limitations on the provision of family reunification services. When the child is over the age of three, "court-ordered services shall be provided beginning with the dispositional hearing and ending 12 months after the date the child entered foster care . . . ." (§ 361.5, subd. (a)(1)(A).) A child is "deemed to have entered foster care on the earlier of the date of the jurisdictional hearing . . . or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent . . . ." (§ 361.49.) Notwithstanding the presumptive 12-month limitation, services can be extended up to 18 months "after the date the child was originally removed from physical custody of his or her parent . . . ." (§ 361.5, subd. (a)(3).)

Under the plain language of section 361.5, subdivision (a)(1)(A), the period for mandatory reunification services begins at the time of disposition and continues while the child is in foster care or until the child is returned to the home of the parent.  The statute does not apply if, at the disposition hearing, a child does not enter foster care, but is placed with a parent.  (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 19.)  Thus, the " 'clock' " for services under section 361.5, subdivision (a), does not start to run unless and until the child is removed from the physical custody of the parents and the court determines whether they are entitled to reunification services according to the lengthy analysis set forth in that statute.  (*In re A.C.* (2008) 169 Cal.App.4th 636, 650 (*A.C.*); *In re Pedro Z.*, at p. 21.)

Section 361.2 also pertains to the provision of reunification services but, unlike section 361.5, applies only when the minor is removed from the physical custody of one parent under section 361 and placed in the custody of the noncustodial parent under the supervision of the juvenile court.  (§ 361.2, subds. (a) & (b); *In re Erika W.*, *supra*, 28 Cal.App.4th at p. 475; *A.C., supra,* 169 Cal.App.4th at p. 644.)  "Section 361.2, subdivision (a)(2) expressly contemplates that reunification services will be offered only for the purpose of facilitating permanent parental custody of the child by one or the other parent."  (*In re Erika W.*, at p. 476; *In re Jesse W.* (2007) 157 Cal.App.4th 49, 60 [reunification often involves one, but not both, parents].)  Thus, a different set of rules regarding reunification services applies in cases where custody of a minor is shifted from one parent to another parent.  (*In re Erika W.,* at p. 475; *A.C.*, at pp. 644, 645.)  Under the limited circumstances of section 361.2, the court may:  (1) order reunification services for the parent "from whom the child is being removed"; (2) order services "solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision"; or (3) order services for both parents, followed

by review hearings under section 366 to determine which parent, if either, should have custody of the child.  (§ 361.2, subd. (b)(3).)

Services ordered under section 361.2 are discretionary and not expressly time-limited[4] because the minor remains in the custody of a parent and the goal of placing a child in parental custody has been met.  (*In re Erika W.*, *supra*, 28 Cal.App.4th at p. 478; see also *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 651.)  Nevertheless, the juvenile court may "structure the provision of reunification services around the ultimate goal of providing a stable permanent parental home for the child."  (*In re Erika W.*, at p. 476.)  When both parents potentially are appropriate permanent placements, the court may provide services to both parents, with permanent custody to be determined at a later review hearing.  (*Id*. at p. 477.)

C

A comparison of sections 361.5 and 361.2 suggests there are two separate statutory tracks for services:  one when a child is placed with a noncustodial parent (§ 361.2), and

---

[4]     T.W. asserts section 16507 limits reunification services to 12 months when a minor has been placed with a noncustodial parent.  Under that statute, "[f]amily reunification services" must be provided to reunite a "child separated from his or her parent because of abuse, neglect or exploitation.  These services shall not exceed 12 months except as provided in subdivision (a) of [s]ection 361.5 and subdivision (c) of section 366.3."  (§ 16507, subd. (a).)  Family reunification services can "only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court."  (§ 16507, subd. (b).)  To the extent section 16507 limits the duration of reunification services when a minor has been placed with a noncustodial parent (§ 361.2), we are not here concerned with that limitation.  The challenge in this appeal is to the order for reunification services when a minor has been removed from the custody of both parents and placed in foster care.  (§ 361.5.)  A proper order under section 361.5 would not provide for more than 12 months of services and would not exceed the 12 months specified in section 16507.  Although the language of section 16507 is not entirely clear, we conclude an order for reunification services under section 361.5 is to be treated separately from an order for reunification services under section 361.2, and the 12-month duration of services under section 16507 is not amalgamated when services are ordered under both sections 361.2 and 361.5.

another when a child is placed with someone other than a parent (§ 361.5). (*In re Erika W.*, *supra*, 28 Cal.App.4th at p. 475.) Here, the juvenile court followed the procedure of section 361.2 when, at a jurisdiction and disposition hearing held in October 2009, it declared T.W. a dependent, ordered her removed from L.T.'s physical custody and placed her with Timothy subject to the court's supervision. (§ 361.2, subds. (a) & (b)(3).) The court exercised its discretion under section 361.2 by ordering services for both parents.[5] (§ 361.2, subd. (b)(3).) Because T.W. was not removed from the custody of both parents at the October 2009 disposition hearing and she did not enter foster care at that time, section 361.5 was not implicated. (*A.C.*, *supra*, 169 Cal.App.4th at p. 649.) Similarly, with respect to the section 342 subsequent petition, the time-limited services of section 361.5 did not apply at either the detention hearing in July 2011 or the disposition hearing in October 2011 because T.W. had not yet been removed from the custody of both parents.[6]

Contrary to T.W.'s argument, the timeline for services under section 361.5 did not begin to run when T.W. was detained in out-of-home care, either in August 2009 or July 2011. Section 361.5 applies only when a child is "removed" from parental custody, not "detained" out of the home. Before the court holds a hearing where jurisdiction is established, it lacks authority to remove a child from a parent's custody. A child may be taken into temporary

_____

[5]     In its jurisdiction and disposition report, Agency recommended reunification services for L.T. and family maintenance services for Timothy. The court's order states Agency is to provide services to the parents consistent with their case plans and the parents are to comply with those services.

[6]     Although T.W. was briefly detained in out-of-home care on the section 342 subsequent petition before disposition, she had not yet been removed from her parents' custody and thus, did not enter "foster care." (See *A.C.*, *supra*, 169 Cal.App.4th at p. 651 [foster care implies placement with person not legally related to child by direct parental blood ties or through formal adoption proceedings].)

14

custody by a peace officer or social worker (§§ 305 & 306), and at the detention hearing, the court is empowered to determine, based on a prima facie showing, whether the minor shall be "further detained." (§§ 315 & 319.) Only after the jurisdiction hearing may the court consider whether it should "limit the control to be exercised over the dependent child" at the disposition phase. (§ 361, subd. (a).) A court is not authorized to conduct a disposition hearing unless and until it has conducted a jurisdiction hearing on the dependency petition and found the child comes within one of the statutory definitions of a dependent child. (§ 300.) Before the court can remove a child from parental custody and make its placement decision, it must make findings based on clear and convincing evidence. (§ 361, subd. (c).) The high standard of proof by which a removal decision is made "is an essential aspect of the presumptive, constitutional right of parents to care for their children." (*In re Henry V., supra,* 119 Cal.App.4th at p. 525.) Because "removal" from parental custody is a milestone in juvenile court proceedings, the distinction between removal and detention is crucial. (*Ibid.*)

T.W. relies on *In re N.M.* (2003) 108 Cal.App.4th 845, 853-854 (*N.M.*) to support her argument the section 361.5 limited time for services begins running at the time of detention. However, in *N.M.*, the court relied on an earlier version of section 361.5 that stated services "shall not exceed six [or 12] months from the date the child entered foster care," but made no mention of when those services begin. (*N.M.*, at p. 852.) Under the amended version of the statute applicable here, "court-ordered services shall be provided *beginning with the dispositional hearing*" and ending six or 12 months after the child entered foster care. (§ 361.5, subd. (a)(1)(A) & (B), italics added.) We disagree with the court in *N.M.*, at pages 854-855, to the extent it holds the limited time for reunification services under section 361.5 starts to run at detention. (See *A.C., supra,* 169 Cal.App.4th at p. 650 [disagreeing with

15

rationale of *N.M.* and holding that despite child's actual removal from parent's physical custody between initial detention and disposition hearing, section 361.5 is inapplicable in the absence of a disposition order placing child with someone other than a parent].)

Moreover, despite some ambiguities in the record before us, it is reasonable to infer that the review hearings on the original section 300, subdivision (j), petition were not conducted to determine whether T.W. could be returned to parental custody because she was already placed with a parent. There were no six-month, 12-month or 18-month findings made at these hearings as there would have been had the court placed T.W. in foster care. Instead, the hearings were meant to monitor T.W.'s placements with a parent—first with Timothy and then with L.T.—and to determine whether court supervision was still necessary. (See *In re Joel T.* (1999) 70 Cal.App.4th 263, 267; *In re Gabriel L., supra*, 190 Cal.App.4th at p. 650 [when a dependent child is safely in custody of one parent, "the court is not concerned with reunification, but with determining whether continued supervision is necessary in the family home"].) The court's goal at that time was to provide a stable, permanent parental home for T.W. through services under section 361.2, with the possibility of eventually giving permanent custody of T.W. to one or the other parent. (§ 361.2, subd. (b)(3); see *In re Erika W.*, *supra*, 28 Cal.App.4th at p. 476.)

When the family's circumstances necessitated the filing of a supplemental petition, the court was required to conduct a hearing to decide whether to remove T.W. from parental custody and provide services. (§ 387; rules 5.565(e), 5.565(e)(2) & 5.695(a).) At the disposition hearing in May 2012, the court removed T.W. from both parents' custody for the first time, triggering the time limits of section 361.5. Thus, the services the parents previously

16

received under section 361.2 did not preclude them from receiving reunification services under section 361.5.

Our conclusion is consistent with the court's holding in *A.C., supra*, 169 Cal.App.4th at page 639: "Section 361.5 time limits for reunification services start to run when a child is removed from all parental custody at the disposition hearing," and not when the child is placed with the noncustodial parent under section 361.2. As the *A.C.* court explained, section 361.5 is "inapplicable in the absence of a disposition ordering a placement with someone other than a parent." (*A.C.*, at p. 650.) The court saw no distinction between a section 361.2 placement with a previously noncustodial parent and a section 362 placement with a custodial parent. (*A.C.*, at p. 649, citing *In re Joel T.*, *supra*, 70 Cal.App.4th at pp. 268-269 [if child is never removed from the physical custody of a custodial parent and that parent receives services under section 362, the section 361.5 clock does not start to run unless and until an amended petition results in removal at disposition].) In either case, the time limits for services set forth in section 361.5 do not apply if the child is not removed from the custody of both parents at the disposition hearing.[7] (*A.C.*, at p. 649.)

As the *A.C.* court noted, "this result makes sense. Children who are placed with at least one of their parents from the beginning of the dependency are differently situated than those who immediately enter foster care. Such a child, in most cases, is not suffering from the same level of disruption and need for prompt permanency adjudication as he or she might otherwise

---

[7]    The mother in *A.C.,* unlike L.T., did not receive reunification services when the minors were originally removed from her custody and placed with the father. Instead, she received an " 'enhancement plan' " in connection with a criminal matter while the father received " 'family maintenance' services." (*A.C.*, *supra*, 169 Cal.App.4th at p. 640.) Despite this factual distinction, we believe the *A.C.* court's holding and rationale apply here.

experience in a foster care placement. Moreover, a custodial parent who has lost custody to a (previously) noncustodial parent following a dependency petition is not similarly situated to one who loses custody of the child to an alternative placement. This parent does not have the same section 361.5 right to attempt reunification during the dependency proceeding if the court decides to maintain custody with the previously noncustodial parent." (*A.C.*, *supra*, 169 Cal.App.4th at p. 652.) Termination of parental rights is not at issue for that parent because the child remains in the custody of the other parent. (Rule 5.725(a)(2) [Court ordinarily "may not terminate rights of only one parent under section 366.26 . . . ."].) Until T.W. was removed from the custody of both parents at the disposition hearing on the section 387 supplemental petition, the parents did not face ultimate termination of their parental rights, even had one or the other parent been unable to reunify within the statutory period. (See *In re A.L.*, *supra*, 188 Cal.App.4th at pp. 145, 146, fn. 7 [because minor was placed with mother, father was not at risk of having parental rights terminated even though he did not receive reunification services].)

D

After the court sustained the allegations of the section 387 supplemental petition, removed T.W. from the custody of both parents and placed her in foster care, the time limits for reunification services under section 361.5, subdivision (a)(1)(A), were triggered. Although the court ordered six months of reunification services for the parents, it did not do so under a section 361.5 analysis,[8] and thus, the case must be remanded to the juvenile court with

_____

8    Instead, the court found there were exceptional circumstances to warrant additional services based on T.W.'s best interests. We are aware that with the passage of time since the disposition hearing, the parents have used some of their entitlement to the statutory maximum.

18

directions to determine whether services should continue for each parent based on current circumstances, including the parents' reunification efforts and T.W.'s permanent placement needs. (See *In re Jesse W., supra,* 157 Cal.App.4th at p. 60 [because reunification services are a benefit, not a constitutional entitlement, the juvenile court has discretion to terminate those services at any time, depending on the circumstances presented]; *In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1241-1242 [father's abysmal efforts at reunification supported court's decision to terminate services before expiration of six-month period]; see also *In re Eileen A.* (2000) 84 Cal.App.4th 1248, 1259 [appellate courts cannot, in dependency cases, mechanistically make determinations without regard to passage of time and intervening events in child's life], disapproved on another ground in *In re Zeth S.* (2003) 31 Cal.4th 396, 413-414.)

## II

T.W. contends the court abused its discretion by ordering six more months of reunification services for L.T. because there were no exceptional circumstances justifying further services, given L.T.'s minimal participation in services she received. However, because we have concluded the statutory time limitation on services did not begin until T.W. was removed from both parents' custody at disposition, which necessitates a remand to determine whether the parents' services should be continued, we need not address this issue.

19

DISPOSITION

The judgment declaring T.W. a dependent and removing her from parental custody is affirmed.  The matter is remanded to the juvenile court to determine whether to continue or terminate the parents' services under current circumstances.


McDONALD, Acting P. J.

WE CONCUR:


O'ROURKE, J.


AARON, J.