Filed 2/20/19; Certified for Publication 3/6/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D.D. et al., Persons Coming Under the Juvenile Court Law. | C086808 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> F.C., <br><br> Defendant and Appellant. | (Super. Ct. Nos. JD237041, JD237042, JD237043, JD237044) |

Appellant F.C. (mother) appeals the juvenile court's order removing her four children from her custody following true findings made on Welfare and Institutions Code section 387 supplemental petitions.  (Unless otherwise stated, statutory section references that follow are to the Welfare and Institutions Code.)  Mother challenges the sufficiency

1

of the evidence to support the court's findings that the previous placement with her was ineffective in protecting or rehabilitating the children and that removing the children from her custody was necessary to prevent substantial danger to them. She also argues that the court failed to consider reasonable alternatives to removal.

We conclude substantial evidence supports the court's findings and dispositional order as to the section 387 supplemental petitions. We affirm the judgment.

FACTS AND PROCEEDINGS

F.C. is the mother of F.V., A.V., P.W., and D.D. At the time of the proceedings, the children were aged 16, 14, 12, and 5 years of age, respectively. They each have different fathers, who have extensive criminal records. Mother also has a criminal record.

In March 2016, the Sacramento County Department of Child, Family and Adult Services (Department) filed original section 300 petitions for each child, alleging mother had used excessive corporal punishment and physically abused the children, and had untreated anger management issues. Since 2002, the Department had received 15 referrals regarding mother and her children, two of which were substantiated.

According to the detention report, mother punched P.W. in the back and struck her with a windshield wiper blade resulting in bruising and marks on her body. Mother later pleaded no contest to a child abuse charge based on the incident involving P.W. (Pen. Code, § 273a, subd. (b).) Mother had also hit A.V. and F.V. with a wire hanger and had punished the children by hitting them with cords, belts, and her hands. The court sustained the petitions, detained the children, and removed them from mother's physical custody. Reunification services were ordered for mother.

Mother participated in services during the reunification period, including eye movement desensitization reprocessing therapy, individual counseling, and conjoint counseling with F.V. Comprehensive Wrap services through Uplift Family Services

2

were also provided to the family. Service providers expressed concerns about mother's aggressive behaviors and her inability to benefit from the services provided.

The children were eventually returned to mother's care on May 22, 2017, although they remained dependents. The court ordered the Department to provide intensive supervision with the discretion to stop the supervision when it deemed it appropriate, and also ordered mother not to drive the children anywhere without a valid driver's license in her possession since mother had been charged with driving under the influence in March 2017.

Shortly after the children were returned to mother, the Department received two child abuse emergency referrals. On June 12, 2017, it was reported that mother had disclosed that she made D.D. consume chili peppers or drink chili juice as a form of punishment for negative behavior. It was also reported that mother had reached into F.V.'s shirt to retrieve a phone and bus passes during a heated dispute. When the case carrying social worker and the emergency response social worker attempted to investigate the reported incidents, mother refused to allow the emergency response social worker in her home and did not allow them access to the children. She refused to speak to the emergency response social worker without her attorney present.

On June 27, 2017, the social worker reported that she received a text message from F.V.'s cell phone which was purportedly written by P.W. In the text message, which was set forth verbatim in the detention report, P.W. begged the social worker to remove her and F.V. from mother's home; she accused mother of forcing a bar of soap into her mouth as a form of punishment, which caused her to hit her head on the wall, and also claimed that mother made her sit outside for an extended period of time in 99 degree heat, kicked her and threatened to pull her back into the house by her hair when P.W. refused to go back inside as mother directed. According to the Department, mother refused them access to the children to investigate and the referral was found inconclusive.

On July 11, 2017, the Department filed separate supplemental petitions under section 387 to remove the children from mother's custody. The petitions alleged the above-described child abuse referrals, and also alleged that mother refused the Department access to the children to investigate, prevented the Department from completing face-to-face intensive supervision visitation with the children, and terminated court-ordered case plan services for the children. The petitions further alleged that mother failed to report her arrest for driving under the influence and that she transported F.V. without proof of a valid driver's license.

On July 14, 2017, the court held a detention hearing for the section 387 petitions. The court found the Department established a prima facie case that the children were described by section 387, and adopted the Department's recommended findings and orders, including that there was a substantial danger to the children's physical health, that they were suffering severe emotional damage, and that there were no reasonable means by which they could be protected without removing the children's physical custody from mother. The court also found that the Department had made reasonable efforts to prevent or eliminate the need for removal. The court detained the children from their mother and ordered minimal supervised visits.

On January 2, 2018, the court held contested jurisdictional and dispositional hearings on the section 387 petitions. At the hearing, the court admitted into evidence several reports and addendums. The matter was continued several times, and on March 5, 2018, the court found the allegations in the section 387 petitions true and sustained the petitions, finding the previous disposition of returning the children to mother's physical custody had not been effective in protecting the children. The court found by clear and convincing evidence that the children remained at substantial risk of serious physical harm unless removed from mother's care and that no service could be put in place to prevent the need for removal. The court removed custody of the children

4

from mother. The court denied mother further reunification services, noting she statutorily ran out of time for reunification. Mother timely appealed.

DISCUSSION

I

*Section 387 Supplemental Petitions*

A section 387 supplemental petition, like the ones filed here, is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care. (§ 387; Cal. Rules of Court, rule 5.560(c); further undesignated rule references are to the California Rules of Court.) A supplemental petition must contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child. (§ 387, subd. (b).)

The hearing on a supplemental petition is bifurcated. (Rule 5.565(e); *In re Javier G.* (2006) 137 Cal.App.4th 453, 460.) (*In re Javier G.*) The court first conducts an adjudicatory hearing at which it must find by a preponderance of the evidence that the factual allegations of the supplemental petition are or are not true, and that the allegation that the previous disposition has not been effective is or is not true. (Rule 5.565(e)(1); Evid. Code, § 115; *In re Javier G.,* at pp. 460-461.) The rules governing jurisdictional hearings apply to the adjudicatory hearing phase on a supplemental petition. (Rules 5.565(e)(2), 5.682-5.684.) If the court finds that the allegations of a supplemental petition are true, it conducts a further dispositional hearing to determine whether there is a need to remove a child from his or her current level of placement. (Rule 5.565(e)(2); *In re Javier G.,* at pp. 460-461.) The rules that govern an initial disposition hearing apply to a further dispositional hearing on a supplemental petition. (Rules 5.565(e)(2), 5.690-5.705.)

5

It is only at the subsequent dispositional hearing that the clear and convincing standard for removal from parental custody under section 361, subdivision (c)(1) becomes pertinent. (*In re Javier G., supra,* 137 Cal.App.4th at p. 461; but see *In re A.O.* (2010) 185 Cal.App.4th 103, 111–112 [recognizing that section 387 does not expressly require application of section 361, subdivision (c)(1) at the dispositional hearing phase; if there has been a prior removal by clear and convincing evidence, a later supplemental petition for removal from a parent need not always apply the section 361 subdivision (c)(1) standard at the disposition phase on a section 387 petition].) At the adjudication phase, the sole issue is whether the allegations in the supplemental petition are true that the previous disposition order has been ineffective in the protection or rehabilitation of the child. (*In re Javier G.,* at pp. 460-461.)

"We review an order sustaining a section 387 petition for substantial evidence." (*In re A.O.*, *supra*, 185 Cal.App.4th at p. 109; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1161 (*In re T.W.*) ["We review the court's jurisdictional and dispositional findings for substantial evidence"].) Evidence is substantial if it is " ' " 'reasonable, credible, and of solid value.' " ' " (*In re T.W.,* at p. 1161.) "We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding." (*Id.* at pp. 1161-1162.) Mother, as the appellant, bears the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order. (*Id.* at p. 1161.)

II

*Order Sustaining the Section 387 Petitions*

Mother contends that insufficient evidence supports the court's finding that returning the children to her care was ineffective in protecting or rehabilitating the

children. While she challenges the sufficiency of the evidence to support some of the court's factual findings, she concedes other findings are supported by sufficient evidence but claims that the conduct shown was insufficient to establish the requisite ineffectiveness finding under section 387.

In this case, the supplemental petitions alleged the court's previous order placing the children back with mother had not been effective in protecting them because mother continued to use excessive and inappropriate disciplinary measures when punishing the children, she improperly terminated services for the children and herself, she drove F.V. with a restricted license after having been arrested for driving under the influence, she prevented the Department from investigating recent child abuse referrals and from completing its intensive supervision duties with the children, and because police were called twice to intervene in heated disagreements between mother and F.V.

In sustaining the supplemental petitions, the juvenile court made the following factual findings. Mother used chili juice to punish D.D., put a bar of soap in P.W.'s mouth, grabbed items off F.V., and placed her foot on P.W. to get her to move when she refused to do as mother directed. Mother terminated the children's services with Uplift and unsuccessfully attempted to transfer service providers to River Oak, which resulted in a loss of services for a period of time for the children. Mother lacked an understanding of how service providers were selected and assigned, and mother would become frustrated and angry when her preferred service provider and her preferred service were not provided. Mother refused to allow an emergency response social worker to investigate the multiple child abuse referrals the Department received after the children were returned to mother's care unless her attorney was present, and, as a result, the Department was unable to conduct appropriate investigations with regular visits.

Based on the testimony and evidence presented, the court also found that mother had made little progress since the case began and remained willing to take action to make certain her children obeyed her, including using inappropriate physical discipline. In the

7

court's view, the "children's behaviors [were] becoming more seriously oppositional" and the court had "every reason to believe that another explosion would be imminent if the children were to remain in the care of . . . mother." These findings served as the basis for sustaining the supplemental petitions and removing the children from mother's custody.

## A.     *Substantial Evidence Supports the Juvenile Court's Factual Findings*

After reviewing the record, we conclude substantial evidence supports the court's factual findings concerning the allegations in the supplemental petitions. (*In re A.O.*, *supra*, 185 Cal.App.4th at p. 109; *In re T.W.*, *supra*, 214 Cal.App.4th at p. 1161.) Mother concedes that the evidence shows she used hot chili juice to punish D.D. and that she grabbed items from F.V. during an argument. Both D.D. and mother testified that she used chili peppers on D.D. to discipline him, and mother and F.V. each testified that mother grabbed F.V. during an argument in an attempt to retrieve a cell phone and bus passes F.V. had stashed in her shirt.

The record also shows that mother put a bar of soap in P.W.'s mouth and that she placed her foot on P.W. to get her to move when she failed to obey mother's commands. While P.W. denied the soap incident completely during her testimony at the adjudicatory hearing on the supplemental petitions and denied sending the social worker the text message from F.V.'s cell phone that described the incident, mother testified that P.W. lied during her testimony. Although mother downplayed her actions, she also conceded that she put soap in P.W.'s mouth to punish her after her attempt to use chili peppers as a punishment was unsuccessful (since P.W. ate the pepper and laughed at mother). Mother also testified that she told P.W. to "[g]o take your ass outside and sit down" after her attempt to punish P.W. with the soap failed. Mother then admitted that she placed her foot under P.W.'s leg to "nudge" her to come inside after she refused to comply with mother's directive to do so.

8

While mother argues that the text message sent from F.V.'s phone to the social worker documenting the soap incident and the subsequent kicking incident lacks foundation and is speculative since both F.V. and P.W. denied sending the message at trial, mother has forfeited her challenge by failing to object to the evidence below. (*People v. Jackson* (2016) 1 Cal.5th 269, 366 [" '[a] general objection to the admission or exclusion of evidence, or one based on a different ground from that advanced at trial, does not preserve the claim for appeal' "; defendant forfeited his claim that officer's testimony lacked foundation by failing to object on this ground at trial].) Although the text message constitutes hearsay contained in the detention report, such evidence was admissible. (Rule 5.684(c)(1) ["A social study, with hearsay evidence contained in it, is admissible as provided in section 355"]; *In re Jonique W.* (1994) 26 Cal.App.4th 685, 692 ["At the contested hearing on a supplemental petition, a report filed by the responsible social worker is admissible if the author is made available for cross-examination on the contents of the report"].)

In any event, mother's own testimony corroborated the incident as described in the text message. (*In re B.D.* (2007) 156 Cal.App.4th 975, 984 ["In this context corroborating evidence is that which supports a logical and reasonable inference that the act described in the hearsay statement occurred"; mother's statement that she "tapped" child on head corroborated witness's hearsay statements that mother struck child in the back of the head].) Mother admitted that she put the soap in P.W.'s mouth, that she sent her outside in the heat, and that she "nudged" her with her foot to get P.W. to comply with her directive to go back inside the house. The text message evidence, together with mother's corroborating testimony were sufficient to support the court's findings.

Substantial evidence also supports the court's additional findings that mother terminated services for the children in an unsuccessful attempt to transfer services from Uplift to River Oak. The evidence showed mother terminated WRAP services with Uplift, which in turn terminated the conjoint counseling sessions. Between the time the

9

children were returned to mother and then subsequently removed from her care, the children were not participating in any WRAP services and there were no service providers in the home.

Although mother testified that she was not trying to terminate services altogether, but rather simply transfer service providers, the end result, as the court found, was that the children were without critical therapy and counseling services for several months.

Likewise, substantial evidence supports the finding that mother denied the Department access to the children. According to the social worker, mother did not let her in the house after the children were initially returned to her care, and later refused to allow the emergency response social worker into her home to investigate the child abuse referrals.

Mother also admitted that she drove F.V. with a restricted license. While she claimed she did not know that she could not drive the children until her attorney explained it to her, the court was free to find such testimony unconvincing, especially given its previous order not to drive without a valid driver's license. (*In re T.W.,supra*, 214 Cal.App.4th at p. 1161 [trial court and not the appellate court judges determine the credibility of witnesses and resolves conflicts in the evidence].)

In sum, the record contains substantial evidence supporting the court's factual findings based on the allegations in the supplemental petitions.

B.      *Substantial Evidence Supports the Ultimate Jurisdictional Fact that the Court's Prior Order was Ineffective in Protecting or Rehabilitating the Children*

Mother argues that the above facts are insufficient to show that the court's prior placement order was not effective in protecting or rehabilitating the children, the ultimate jurisdictional fact necessary to sustain a supplemental petition. (§ 387; *In re Jonique W.*, *supra*, 26 Cal.App.4th at p. 691.) We disagree.

Mother first contends that using hot chili peppers on D.D., grabbing items from F.V. during an argument, placing soap in P.W.'s mouth, forcing her to sit outside, or putting her foot on P.W. to make her comply with mother's commands were not abusive or harmful. Citing *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 90-93, *In re D.M.* (2015) 242 Cal.App.4th 634, 640–642, and *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1102-1103, mother argues that parents are permitted to physically discipline their children and that the above disciplinary measures did not cause bruises, marks or any form of substantial pain or discomfort. In her view, even if true, the conduct does not constitute a sufficient basis to find that the placement was ineffective in protecting or rehabilitating the children.

While we generally agree that parents may use age-appropriate corporal punishment to discipline their children, that general rule does not mean that mother's conduct, under the present circumstances, was not harmful or cruel. The court could reasonably infer that mother intended to cruelly inflict inappropriate physical pain on D.D. by forcing him to eat hot chili peppers when he disobeyed her. At the time of the incident, D.D. was very young--around four or five years old. Mother herself acknowledged that D.D. cried and screamed hysterically when she used the chili peppers. According to the social worker, D.D. "cried heavily" when mother threatened to use them on D.D. And mother herself acknowledged that using chili juice, as well as soap, to punish the children was not appropriate.

The court could also reasonably conclude that grabbing items from F.V. during a heated argument unnecessarily escalated the situation, which could have led to a serious physical altercation between mother and child. Such an inference is reasonable given the family's chaotic history, with mother and F.V. calling the police on one another during intense verbal confrontations, and the court's further observation that "[t]here is every reason to believe that another explosion would be imminent if the children were to remain in the care of the mother."

11

The juvenile court, moreover, was not required to view this conduct in isolation. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206 ["The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of the child's circumstances" when making decisions regarding the child]; *In re Fred J.* (1979) 89 Cal.App.3d 168, 175 [court considered combination of factors in upholding a supplemental petition under section 387 to remove custody of dependent children from mother's care].) Although each incident alone might not render the prior placement with mother ineffective in protecting the children, the court could consider the totality of mother's inappropriate physical disciplinary methods, especially given her history of physically abusing the children. (*In re A.F.* (2016) 3 Cal.App.5th 283, 289 [juvenile court may consider past events to determine whether a child presently needs juvenile court protection]; *In re Jasmon O.* (1994) 8 Cal.4th 398, 424 [a parent's future potential is revealed in the parent's past behavior with the child].) In other words, the court properly considered the totality of the circumstances rather than viewing each separate incident in a vacuum, devoid of any context, as mother urges on appeal.

Mother next argues that evidence showing she canceled services, refused to provide the Department access to the children, drove the children without a valid license, and visited the children without supervision, contrary to the court's prior orders, was insufficient to show the prior placement was ineffective in protecting the children. Citing *In re W.O.* (1979) 88 Cal.App.3d 906, 910 and *In re C.M.* (2017) 15 Cal.App.5th 376, 380, 388-389, she argues that removing a child from parental custody for violating a court's order is inappropriate. While that may be true, mother did more than merely violate a court order. Instead, the evidence shows that despite receiving months of services and counseling, mother continued to utilize inappropriate disciplinary measures intended to inflict physical pain on the children when they disobeyed her orders.

Given the totality of the circumstances, substantial evidence supports the trial court's finding that its prior order returning the children to mother's care was not

12

effective in protecting or rehabilitating the children.  The evidence showed a family in crisis with children becoming increasingly more defiant and mother ill-equipped to handle the inevitable confrontations.

## III

### *Disposition Order Removing Children from Mother's Custody*

"When a section 387 petition seeks to remove a minor from parental custody, the court applies the procedures and protections of section 361." (*In re T.W., supra*, 214 Cal.App.4th at p. 1163; *In re Paul E.* (1995) 39 Cal.App.4th 996, 1001-1003; but see *In re A.O., supra*, 185 Cal.App.4th at pp. 111-112.)  Before removing a minor from his or her parent's custody, the court must find, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); *In re T,W.*, at p. 1163; *In re Javier G.*, *supra*, 137 Cal.App.4th at p. 462.)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent." (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163; *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60.)  It is not required that the parent be dangerous or that the child have been harmed before removal is appropriate. (*In re T.W.*, at p. 1163.)  "The focus of the statute is on averting harm to the child." (*Ibid.*)  We conclude substantial evidence supports the court's removal order.

The record supports a finding that mother was unable to provide proper care for the children and that they would be at risk of harm if they remained in her custody. (§ 361, subd. (c)(1).)  Mother continued to use inappropriate or excessive disciplinary methods whenever the children challenged or disobeyed her--measures intended to inflict

13

pain or suffering on the children. She engaged in highly charged verbal confrontations with F.V., one of which involved her grabbing F.V.'s shirt during the dispute to retrieve property. Police were often called to mediate the disputes between mother and daughter.

Although the family was clearly in crisis, mother refused to cooperate with service providers and cancelled much needed services from providers that could come into the home to teach mother different ways to cope with her children's ever-increasing defiant behavior. She also prevented the Department from gaining access to the children to investigate new child abuse referrals. Based on this evidence, substantial evidence supports the finding that the children's physical health, safety, and physical and emotional well-being were in substantial danger if they remained in mother's care, and that there were no reasonable means by which the minors' physical health could be protected without removing them from her physical custody. (§ 361, subd. (c)(1).)

Substantial evidence also supports a finding that reasonable efforts were made to prevent or eliminate the need for the children's removal from mother's custody. (§ 361, subd. (d); *In re Javier G.*, *supra,* 137 Cal.App.4th at p. 464 [reasonable efforts were made to prevent or eliminate the need for removal where extensive and reasonable services had been provided to mother and children].) Mother and the children were provided with extensive services throughout the pendency of the case and before the children were removed from mother's custody for the second time. These services included comprehensive WRAP services within the home with three facilitators, two case managers, a parent support person, individual counselors for the children, behavioral specialists for F.V., A.V., and P.W., and conjoint counseling sessions.

Mother's argument that the court failed to consider using a different service provider or a public health nursing service to check on the children is not persuasive. Her contention that unannounced visits would have been a less drastic alternative is likewise unavailing. Given mother's history of refusing the Department uninhibited access to the children, her extreme difficulty in working with any service providers, and not allowing

14

unannounced visits into the home to investigate child abuse referrals, there was no reason to believe she was likely to cooperate with different service providers or allow unannounced visits to monitor the children's well-being.

## DISPOSITION

The orders sustaining the supplemental petitions under section 387 and removing F.V., A.V., P.W., and D.D. from mother's custody are affirmed.


      HULL      , Acting P. J.


We concur:


      ROBIE      , J.


      MURRAY      , J.

Filed 3/6/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D.D. et al., Persons Coming Under the Juvenile Court Law. | C086808 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>F.C.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD237041, JD237042, JD237043, JD237044)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of San Joaquin County, Jerilyn L. Borack, Judge. Affirmed.

Richard L. Knight under appointment by the Court of Appeal, for Defendant and Appellant Mother F.C.

Robyn Truitt Drivon, County Counsel and Elizabeth H. Wright, Deputy County Counsel, for Plaintiff and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on February 20, 2019, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:



      HULL            , Acting P. J.



      ROBIE            , J.



      MURRAY         , J.