Filed 8/21/23  In re A.F. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.F. et al., Persons Coming Under the Juvenile Court Law. | C096886 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C. G.,<br><br>Defendant and Appellant. | (Super. Ct. No. STKJDDP20220000095) |

C.G., mother of the minors A.F. and A.P., appeals from the juvenile court's disposition order removing the minors from her custody and placing the minors outside the home.  (Welf. & Inst. Code, §§ 300, 395)  She contends there was insufficient evidence to support the removal order.  Finding no merit in mother's contention, we affirm.

BACKGROUND

I

*Initial Dependency Proceedings*

On March 7, 2022, the reporting party reported that A.F. (then age five years; the older minor) disclosed that her father hit her with a belt, struck mother in the eye, and pulled mother's hair. The older minor was scared and hid under a blanket with A.P. (then age one year; the younger minor). On March 3, 2022, a social worker interviewed the older minor who disclosed that law enforcement was often called to the home. The older minor gave conflicting statements initially but after the social worker reminded her about the importance of telling the truth, she stated that father hits mother " 'all the time.' " She was afraid of her father because "he hits her with a belt every day." The school disclosed that the older minor was frequently returned to the school, because no one was at the bus stop to take her home, and she was absent or late for school dozens of times.

The school principal stated that a restraining order was not located in the older minor's file, but mother had called the school at the beginning of the school year to tell staff not to provide father any information regarding the older minor. The principal reported that the manager of a trailer park where the family lived made numerous reports to the school about the ongoing issues with domestic violence, including an incident where mother was on the hood of a car, while the older minor locked herself and the younger minor in their trailer, until a neighbor retrieved the minors and took them into their trailer.

Mother told the social worker that father did not live with her and that she had a criminal protective order against him that allowed for peaceful contact to exchange the minors. The social worker saw two shattered windows on the front passenger side of the family's trailer, a window with glass falling out, and a disorganized and dirty trailer. Mother denied that the older minor locked herself in the trailer and said that during an

argument with father, she could not find the older minor because a neighbor hid the minor from her, which prompted her to call the police.

On March 7, 2022, the social worker learned that law enforcement responded to mother's home 10 times over the last six months and that the father had violated the restraining order. Mother also had a history of being the aggressor in some of the domestic violence incidents. Mother claimed that father owned the trailer, and she was being evicted.

The trailer park manager told the social worker that mother was being evicted, she saw father leaving the home the previous day, and father's car was parked next to the mobile home park over the weekend. The social worker interviewed the older minor who recanted many of her prior statements. The social worker interviewed father who stated he was the biological father of both minors but was not on the older minor's birth certificate. He lived with his brother but owned the trailer. He denied any physical discipline of the older minor or any domestic violence in front of the minors. The social worker spoke to a maternal relative who reported that the situation between mother and father was ongoing, mother had previously exposed her children to neglect and abuse, and mother had ongoing substance abuse issues.

On March 14, 2022, the San Joaquin County Human Services Agency (Agency) filed a dependency petition on behalf of the minors alleging they came within the provisions of the code regarding failure to protect, serious emotional damage, and abuse of sibling. The petition also alleged mother had a history of drug use and an inability to protect the minors from domestic violence exposure.

At the March 15, 2022, detention hearing, the juvenile court ordered the minors detained.

II

*Jurisdiction and Disposition*

At the March 29, 2022, jurisdictional hearing, the court declared father was the presumed father of both minors. The Agency's April 21, 2022, jurisdiction report noted mother's 2014 dependency case, in which a half-sibling was removed from mother due to substance abuse, her reunification services were terminated, her parental rights were terminated, and the minor was adopted. The report also contained the history of contacts with child welfare agencies for domestic violence and substance abuse in different counties from April 2006 to March 2022. The report attached police reports regarding mother's and father's various contacts with law enforcement, along with a report from the school showing the older minor's numerous unexcused absences and tardiness.

The Agency's June 17, 2022, disposition report reflected mother's history of contacts with law enforcement due to substance abuse and domestic violence. The Agency reported that mother previously coached the older minor to say that father did not hit her or mother. Finally, it was reported that mother was frequently late for visits, interrupted father's visits, refused to follow directives from the visitation monitor, and instructed the older minor to ignore the monitor. The Agency reported its concern that mother failed to engage in any services aside from a single counseling session.

At the June 28, 2022, contested jurisdictional hearing, mother testified and denied any ongoing substance abuse. She and father argued but there was no domestic violence. But mother admitted she and father had been arrested for domestic violence. A criminal protective order was issued to protect her, but she went to court to have it removed. Mother denied various incidents involving domestic violence with father, incidents that were documented in police reports and captured on a video made by father and viewed by police officers. The social worker's report about the conditions of the trailer was inaccurate but mother admitted that two of the trailer's windows were broken and there

was broken glass. Father also denied the Agency's allegations against him. Mother's neighbor denied witnessing any domestic violence between mother and father.

The juvenile court found that there was a veracity issue and found the allegations of the petition true.

The Agency's July 8, 2022, supplemental disposition report showed that mother's reunification case plan consisted of compliance with required drug tests, compliance with court orders, individual counseling, family counseling, and parenting education. Mother had engaged in individual counseling but refused additional services and continued inappropriate behavior during supervised visits, such as coaching the older minor. Mother also missed visits and frequently failed to confirm visits.

At the August 16, 2022, contested dispositional hearing, mother's counsel submitted on the report and opposed the recommendation to bypass services. The court adopted the proposed findings and orders in the June 2022 disposition report that included removal of the minors.

On January 6, 2023, the juvenile court entered an order granting mother reunification services.

## DISCUSSION

Mother contends the juvenile court erred in removing the minors because there was insufficient evidence of a substantial danger to the minors if they remained in her care, and the juvenile court failed to consider other reasonable means to protect the minors without removal. We disagree.

To support an order removing a child from parental custody, the juvenile court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's

5

. . . physical custody." (Welf. & Inst. Code § 361, subd. (c)(1); see *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W., supra*, 214 Cal.App.4th at p. 1163.)

When reviewing removal findings, " '[w]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard.' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239, italics omitted; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1004-1005.) Mother bears the burden of showing the juvenile court's findings and orders are not supported by substantial evidence. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) She has not met her burden.

At the August 16, 2022, contested dispositional hearing the court had the testimony from the jurisdictional hearing and the Agency reports. The minors were initially removed due to multiple reports of domestic violence, father hitting the older minor with a belt, the older minor's extensive absences from school, and unsafe living conditions. Mother's history of contact with child welfare agencies for domestic violence and substance abuse, in different counties dating from April 2006 to March 2022, was well-documented. Law enforcement responded to mother's home for domestic violence and restraining order violations 10 times over the six months prior to the initial detention. Mother's claims that there was no domestic violence were contradicted by the older minor's initial reports to the school and social worker—prior to evidence of coaching—as well as the trailer park manager's reports and the maternal relative's reports. The juvenile court reasonably determined that there was a veracity issue with mother's and

6

father's testimony at the jurisdictional hearing. Additionally, the Agency's report attached multiple police reports regarding domestic violence and a report from the school showing the older minor's numerous unexcused absences and tardiness. Further, mother repeatedly refused to engage in services and visit the minors. During the five months between detention and the contested disposition hearing, there is little evidence mother made any meaningful change to reduce the risk of harm to the minors. And mother continued to deny putting the minors at risk.

Nevertheless, mother claims the Agency failed to consider reasonable efforts to prevent removal, such as instituting a safety plan so the minors could remain in the home. Such efforts would ultimately depend on mother's willingness to engage in services and cooperate with the Agency, and there is no evidence of that given mother's refusal to engage in most offered services.

Under these circumstances, the juvenile court could reasonably conclude that the minors would be at risk of harm if returned to mother, and there was sufficient evidence to support the juvenile court's finding that there were no reasonable means to protect the minors without removing them from mother's custody.

## DISPOSITION

The juvenile court's order is affirmed.



                         /s/
                         MESIWALA, J.



We concur:



 /s/
DUARTE, Acting P. J.



 /s/
BOULWARE EURIE, J.

8