Filed 4/23/21  In re L.F. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re L. F., a Person Coming Under the Juvenile Court Law. | C092374 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>G. F.,<br><br>Defendant and Appellant. | (Super. Ct. No. 20DP00055) |

G. F., mother of the minor (mother), appeals from the juvenile court's disposition order removing the minor from her care and custody.  (Welf. & Inst. Code,[1] §§ 300, 395.) We affirm.

---

[1]     Unspecified statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

On February 25, 2020, sheriff's deputies arrested Douglas (mother's boyfriend) and charged him with making criminal threats. Mother reportedly left the seven-year-old minor with Douglas; however, the minor was not with Douglas at the time of his arrest because Douglas allowed the minor to stay with another man, Douglas's former foster brother Anthony. Deputies became concerned when they could not reach mother, who was said to be working out of town. Deputies found the minor watching television at Anthony's house. The minor was dressed in clean clothing but had dirt under her fingernails and toenails and knots in her hair. The minor told deputies she last saw her mother approximately one week ago and she last spoke with her mother by telephone the previous night. The minor did not know her birthdate and took some time to recall her last name. She told deputies she "goes to school on the computer but . . . is not smart because she can't read."

Mother returned the social worker's call the next day and reported she worked "under the table" for a friend's father who is a home inspector. She worked out of town and she left the minor with Douglas, whom she had known for 13 years, because she knew the minor would be safe with him. Mother stated she was married to Edouard but was currently going through a divorce. She reported she was hiding from Edouard, who had physically abused her in the past and threatened to kill her, and she had taken the minor out of elementary school because Edouard would wait outside the school and attempt to follow her home. The social worker asked mother for her address in order to assess mother's home and the minor's safety. Mother stated she was staying with Douglas and would use his address temporarily, but her plan was to move to Arizona with the maternal grandfather.

On February 27, 2020, the Butte County Department of Employment and Social Services (Department) filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (g). The petition alleged mother left the minor with

2

Douglas, who had been arrested and booked into the county jail.  Despite numerous attempts, mother could not be reached and her whereabouts were unknown at the time the minor was detained.  The petition also alleged the minor's father was incarcerated.[2]

The detention report noted there was a substantial danger to the health and well-being of the minor given that mother left the minor for extended periods of time and the Department had been unable to assess the minor's living environment or her caretaker. The minor had not been enrolled in school since December 2018, she was unable to read or write, and she was having problems with her vision.  The Department recommended that the court detain the minor and order out-of-home placement, noting its concern that mother might flee the court's jurisdiction.

At the detention hearing, mother confirmed a mailing address in Oroville and was advised to keep the court and the Department apprised of her current mailing address. Mother told the court she was working out of town for a friend "under the table," and that she was unavailable when the deputies were trying to reach her because her phone was broken.  Mother stated the minor participated in school online because mother's ex-husband Edouard threatened her and waited outside the minor's school and followed mother home.  Mother claimed she spent four hours a day helping the minor do her homework and, when mother was out of town, Douglas was supposed to do homework with the minor.  The court ordered interim detention pending a contested hearing.  The court further ordered mother to drug test immediately and that the Department inspect mother's home.

During the contested detention hearing on March 3, 2020, following testimony from social worker Jennifer Din, mother's counsel informed the court that the parties

---

[2]    The petition was later amended to correct the spelling of the alleged father's name and Douglas's street address, and amended again to reflect that, at the time of detention, the alleged father's identity and whereabouts were unknown.

reached a tentative agreement on releasing the minor back to mother. Counsel stated mother was working on housing and would be staying in a hotel paid for by the maternal grandfather and the Department would make a referral for housing assistance. The court stated it wanted mother to drug test and counsel confirmed mother's willingness to do so. The court asked mother, "Is it going to be clean?" Mother responded, "Yes." The court then asked, "So mother, I need to know from you the absolute truth." Mother responded, "It will be clean." The court explained, "If there's anything that's going to show up; any alcohol, or any marijuana, or anything else, now is the time for you to tell us, because I'm going to order you to give a test right now, and if you can't produce a sample or the sample is dirty for anything, they're not going to release this detention. [¶] So it's going to be clean?" Mother responded, "Yes, ma'am."

During a court recess, mother drug tested as instructed. She produced a small sample that was presumptively positive for methamphetamine and morphine. Mother stated she did not believe the test was correct and claimed she might have tested positive because Douglas's friends were trying to get her out of the house and might have slipped something into her drink. Mother stated she would return later in the day and attempt to produce a larger sample. In the meantime, the court ordered the minor detained and ordered mother to abstain from use of alcohol, marijuana, and other drugs. Mother did not return to provide another sample. When mother's previous sample was sent to the lab for confirmation, the results were positive for morphine and showed that amphetamines were detected but the sample size was insufficient to confirm methamphetamine.

The jurisdiction hearing was continued from March to April 2020 due to the Covid-19 pandemic. At the April 8, 2020, continued hearing, the Department reported that mother failed to appear by telephone for a scheduled child family team (team) meeting and failed to participate in online parent engagement counseling classes despite having been referred to those classes. Mother was, however, participating in telephone visits with the minor. The court encouraged mother to contact her social worker and take

4

advantage of any services available to her and continued the hearing. The matter was briefly recalled, at which time the parties submitted on jurisdiction. Mother's counsel informed the court that mother was homeless and was living outside the county. The court sustained the petition, adjudging the minor a dependent of the juvenile court.

The disposition report recommended the court continue the minor's out-of-home placement, order that reunification services be provided to mother and that she comply with her case plan, and bypass father for services pursuant to section 361.5, subdivision (a). Father reported he had been released from prison in October 2019 and was on probation. Mother reportedly missed appointments and meetings and had not made herself available to the social worker. She claimed to have hired a private attorney and stated she would not be discussing her needs or the components of her case plan on the advice of her attorney. The report concluded the minor could not safely be returned to mother's care as mother did not have stable housing, had not begun to participate in parent engagement classes, remained difficult to contact, and had not had a drug and alcohol assessment.

An addendum report filed July 8, 2020, recommended the court find father to be the presumed father of the minor and that both parents be provided with reunification services and ordered to comply with their respective case plans. Father participated in a team meeting on June 22, 2020. Mother continued to have limited contact with the Department and rarely responded to the social worker's texts and phone calls. She had been slow to participate in services and was in danger of being dropped for the third time from her parent engagement classes. The social worker referred mother to Stepping Stones, an alcohol and drug treatment program, several times but mother failed to contact the provider or complete an assessment. Mother told the social worker that she purchased land in Oroville from Douglas and would be purchasing a travel trailer " 'any day now' " to place on the property. The social worker informed mother that any residence would require an assessment to determine if it was suitable to return the minor

5

to mother's care. Mother did not respond to a subsequent text from the social worker about the status of mother's living situation.

The addendum report noted mother's prior arrest, on July 14, 2019, for possession of heroin, a glass pipe, and a scale. Mother's case was pending in the Tehama Superior Court. Given that prior arrest and mother's positive test for morphine on March 3, 2020, the Department had concerns about mother's possible substance abuse issues and the social worker texted mother referring her to drug test on June 2, 2020 and July 3, 2020. Mother's retained attorney responded to the text and asked whether there was an allegation of drug use in the petition and a court order for drug testing. Mother did not acknowledge the texts and did not appear for drug testing. While mother did not participate in case planning with the Department, the Department created an updated case plan for her. The Department again recommended that the court find father to be the minor's presumed father, order continued out-of-home placement for the minor, and order reunification services for both parents.

After several continuances, the contested disposition hearing commenced on July 14, 2020. The court took judicial notice of the Department's reports and heard testimony from several witnesses.

A

*Testimony Of Social Worker Inga Reeder*

Social worker Inga Reeder testified she began working as a social worker in Butte County in February 2020. Reeder recommended the court order the minor's continued out-of-home placement because she had been unable to ascertain where mother lived or assess mother's home for safety. Reeder also had concerns about mother's possible substance abuse based on the information she had, and it was her belief that if someone were using illegal substances he or she could not adequately care for a child. She worked closely with her supervisor, who told her to make the recommendation of suitable placement due to the inability to assess mother's home for safety and concerns about

6

mother's potential drug use. Reeder also testified that mother stated she was living outside the county and staying in motels, but Reeder was unable to assess mother's living situation because mother did not identify the motels or provide Reeder with an address. Reeder stated she did not believe mother was a danger to the minor, but Reeder had not yet been able to assess mother.

Reeder communicated with mother several times a month, but mother did not often respond to her texts or telephone calls. Reeder testified she attempted several times to make an appointment with mother to go over the case plan but was unable to do so. Mother was not present for the first team meeting when the minor's educational and medical needs were discussed, namely, that the minor was not able to read or write and needed eyeglasses. Reeder met mother in person once when mother signed the paperwork for in-person visits, but Reeder was unable to get a family history from mother or complete an assessment at that time. Mother did not make herself available for meetings or provide a list of any prescription medications as requested.

Reeder testified she considered other alternatives to suitable placement such as placement with relatives and family friends and referral of services such as parent engagement counseling and a nurturing parent program. So far, mother had attended three out of eight parent engagement counseling sessions and had to be re-referred due to failure to attend. Reeder provided mother with literature on housing assistance to help her find suitable housing. Reeder also referred mother to Stepping Stones for an alcohol and drug assessment because she had concerns about mother's potential drug use based on mother's arrest in Tehama County for possession of heroin in July 2019 and her positive test for morphine and opiates in March 2020. Reeder checked the court records in mother's Tehama County case and found mother had a warrant for her arrest for failure to appear. Mother had been asked by another social worker to drug test three times but only tested once. Reeder asked mother to drug test two times but mother did not test as requested. Reeder asked mother if she had a prescription for opiates, but mother did not

provide a response. She felt it was important for mother to drug test in order to determine if she had any issues with substance abuse. Reeder testified she did not consider returning the minor to mother under a plan of family maintenance because she could not ascertain where mother was living.

Reeder testified that mother had been participating in regular telephonic and in-person visitation with the minor. However, mother missed the two most recent in-person visits arranged by Reeder.

With regard to the minor, Reeder testified the minor was enrolled in kindergarten from October to December 2018 but her educational records were not forwarded to another school thereafter. Mother told Reeder the minor was enrolled in an online school called Time for Learning. Due to the Covid-19 pandemic, the minor continued to do online classes while in foster care. She had an online tutor because she had difficulty focusing on the online format and became easily distracted.

B

*Testimony Of Social Worker Jennifer Din*

Social worker Jennifer Din testified she was the initial detaining social worker on the case. Din detained the minor based on the opinions of the detaining deputy and Din's supervisor that the person the minor was left with (Douglas) had been arrested and the person Douglas left the minor with (Anthony), who stated he only met the minor " 'a day or two prior,' " did not have any legal authority to make decisions or arrangements for the minor. Din testified that both she and law enforcement officers attempted to contact mother without success. Mother finally called Din back the following morning and stated she was in Southern California. Due to mother's previous referral regarding possession of heroin, and the fact that mother left the minor with Douglas, Din asked mother to meet in person and drug test before court. Din noted that, while mother was not required to drug test, the information from the test would have helped with Din's assessment. She further noted that, while mother's decision not to test would not be used against her, it

8

would mean the detention hearing would go forward in order to obtain the court's input on the matter. Din testified an allegation regarding mother's drug use was not included in the petition because there was no "hard evidence" or "concrete information" to support it.

Din first met mother in person on February 28, 2020, at the detention hearing in court. The plan was to do an assessment after mother drug tested and provided Din with her address. The address mother provided was Douglas's address in Oroville; however, Din was informed that mother was not allowed to live there.

Din testified that, when she detained the minor, the minor said, "Oh, I'm dumb because I don't know how to read." Din learned the minor attended kindergarten only several months before being taken out of school in December 2019. Thereafter, the minor was not enrolled in school until the time the foster parents placed her in a learning program in March 2020.

The court found there was clear and convincing evidence of a substantial danger to the minor if returned to mother's care and custody and no reasonable means to protect the minor short of removal. The court ordered continued out-of-home placement for the minor and visitation and reunification services to both parents.

## DISCUSSION

Mother contends the juvenile court erred in removing the minor from her care and custody because there was insufficient evidence of a substantial danger to the minor if she remained in mother's care and the court failed to consider other reasonable means to protect the minor without removal. The claims lack merit.

To support an order removing a child from parental custody, the court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); see *In re Heather A.* (1996) 52 Cal.App.4th 183,

9

193; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) The court also must "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

When reviewing removal findings, " '[w]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings *based on the clear and convincing evidence standard.*' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239-1240; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1004-1005.)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163.)

Here, there was sufficient evidence to support the court's removal order. The record makes plain that mother left the seven-year-old minor with Douglas while she went to work in another county. Douglas then left the minor with his former foster brother, Anthony, who had only met the minor two or three days prior. When Douglas was arrested for making criminal threats, sheriff's deputies and the social worker were unable to reach mother by telephone despite numerous attempts. Mother eventually returned the social worker's call the following morning, but thereafter did little if anything to demonstrate her ability to adequately care for the minor or assist the Department in ascertaining whether it was safe to return the minor to her care. For example, mother failed or refused to provide an address so that her living space could be assessed for safety issues, simply telling the social worker she was staying in motels. She did not maintain consistent communication with the social worker, return texts or telephone calls, provide a family history, discuss case planning, make herself available

for meetings, or provide a list of her prescription medications. There were also concerns that mother may be using illegal substances based on a pending case in Tehama County regarding mother's July 14, 2019, arrest for possession of heroin, a glass pipe, and a scale; mother's March 2020 positive test for morphine and opiates; and the fact that mother refused to drug test. In view of these facts, there was sufficient evidence in the record to support the court's removal order.

Mother claims the minor was in no danger when she left the child with Douglas, whom she had known for some time and who had no criminal history or evidence of mental illness. We are not persuaded. Mother left the minor with Douglas, who had no legal authority to make decisions about care for the minor, but Douglas then left the minor with Anthony, who lived some distance away, had only just met the minor, and had no legal authority to care for or make decisions for the minor if necessary or in the event of an emergency. Indeed, Anthony reported he attempted to reach mother by text but did not hear back. Further, Douglas was arrested for criminal threats and taken into custody, preventing him from caring for the minor even if she had been in his care.

Mother argues there was insufficient evidence for removal because there were no drug use allegations in the petition, her drug test came back positive "for morphine only" and was negative for methamphetamine, and the Department had no concrete evidence of her drug use. We disagree. The fact that there were no substance abuse allegations in the petition is not dispositive of whether the issue of potential drug use can be considered when determining whether removal is appropriate. As a preliminary matter, the social worker testified the decision to recommend removal was based on mother's refusal to provide the Department with specific information about where she was living, preventing the social worker from assessing mother's living space for safety; as well as concerns about mother's potential drug use, based on the pending Tehama County case for possession of heroin, a glass pipe, and a scale; mother's positive test for morphine and opiates; and the fact that mother refused to drug test.

11

Mother further argues the juvenile court failed to consider reasonable means to protect the minor without removal. She claims the Department did nothing to assist her in finding appropriate housing, failed to assess the condition of Douglas's home, and could easily have conducted unannounced visits once she was in stable housing. The claims are untenable.

Mother initially told the social worker and the court that she was staying with Douglas and would use his address temporarily, but her plan was to move to Arizona. At the detention hearing on March 3, 2020, the parties reached a tentative agreement to release the minor back to mother based on representations that mother was working on housing and would be staying temporarily in a hotel room paid for by the maternal grandfather, and the Department would be making a referral for housing assistance. The agreement was contingent upon mother's clean drug test. However, mother tested presumptively positive for morphine and methamphetamine, and lab tests confirmed her test was positive for morphine and opiates and the court ordered the minor detained. Thereafter, efforts to assist mother in finding housing and assess that housing for suitability were fruitless. In April 2020, mother was homeless and living outside the county. Social worker Reeder testified she provided mother with literature on housing assistance to help her find suitable housing. Mother continued to have limited contact with the Department and rarely responded to the social worker's texts and phone calls. She finally met with the social worker in person on June 26, 2020, and reported she had purchased land from Douglas and would be buying a travel trailer to place on the property. The social worker advised mother that any residence would require assessment to determine suitability for the minor. However, when she texted mother on July 2, 2020, to ask about the status of her living situation, mother did not respond. Mother's inability or unwillingness to communicate with the Department or provide information as to her whereabouts throughout the proceedings made it impossible to assist her in finding stable, suitable housing.

12

We conclude the evidence was sufficient to support the court's order removing the minor from mother's care and custody.

## DISPOSITION

The juvenile court's orders are affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Hoch, J.

/s/
Renner, J.

13