Filed 5/13/24  In re S.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re S.C., a Person Coming Under the Juvenile Court Law. | C098625 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>S.W.,<br><br>        Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2021-0000107) |

Appellant S.W. (mother), mother of the minor S.C. (the minor), appeals from the juvenile court's dispositional orders.  (Welf. & Inst. Code, §§ 361, 395.)[1]  Mother

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

contends there was insufficient evidence to support the juvenile court's order removing the minor from her custody. We will affirm.

BACKGROUND

In February 2021, mother was a party to a pending dependency proceeding involving one of the minor's half siblings, R.S., in which mother was arrested and charged with physical abuse of R.S. while under the influence of alcohol. The San Joaquin County Human Services Agency (the Agency) initially did not include the minor or the minor's other half sibling, A.W., in those proceedings because their respective fathers agreed to keep the minors away from mother and to file for legal custody of their respective children.[2] However, when it was discovered that the minor's father, L.C. (father), had been allowing mother to care for the minor unsupervised despite having been previously admonished for doing so, the minor was removed from father and placed in protective custody.

The Agency filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (j), alleging failure to protect the minor due to mother's unresolved history of alcohol abuse, father's failure to protect the minor from mother, and mother's physical abuse of R.S. The detention report noted that, in December 2020, mother had been arrested and charged with felony child abuse for punching and causing injuries to R.S., then 14 years old. In that pending companion case, R.S. was removed from mother's custody and placed in out-of-home care, and mother was prohibited from having any of her other children, including the minor, in her care until she completed her case plan and reunified with R.S. The detention report also detailed mother's extensive history of alcohol abuse.

---

[2]     The minor's half siblings, R.S. and A.W., are not parties to this appeal and will be mentioned only when relevant to the issues raised by mother.

2

At the March 18, 2021, detention hearing, the juvenile court ordered the minor detained, with supervised visits for mother. The court also ordered mother to drug court. The minor was placed with the maternal aunt.

The juvenile court sustained the amended petition as to father on April 13, 2021, and as to mother on May 11, 2021.

At the July 27, 2021, disposition hearing, mother's counsel reported that mother was participating in outpatient substance abuse treatment, individual counseling, and parenting classes. The juvenile court expressed concern regarding mother's "lifelong pattern" of physical and mental abuse of R.S. and the fact that the minor was not protected from such abuse. The court also expressed its reservations about ordering reunification services, noting mother had substantial issues with alcohol and violence which she directed toward "people who cannot protect themselves." Notwithstanding those reservations, and the existence of an applicable bypass provision, the court ordered that mother be provided with reunification services. The court ordered services for father as well. Mother's case plan included substance abuse treatment (including random drug/alcohol testing), compliance with court orders, parenting education, and personal counseling.

On October 7, 2021, the Agency filed a supplemental petition (§ 387), and the juvenile court ordered the minor detained after the maternal aunt allowed mother to have unsupervised visits with the minor.

In January 2022, the Agency recommended continued reunification services to mother, who was reportedly participating in services. Mother participated in outpatient substance abuse treatment but was terminated twice for testing positive for alcohol or failing to test at all. She was allowed to return to the program each time. Mother tested positive for alcohol on December 21, 2021, and was at risk of being terminated again. The Agency stated that, despite her recent positive test, mother still demonstrated the ability to complete her case plan and possibly reunify with the minor.

3

In February 2022, the Agency reported that mother had received a charge of driving under the influence (DUI) in June 2021 but did not disclose the DUI prior to re-entering her substance abuse treatment program. Mother was placed on a Secure Continuous Remote Alcohol Monitoring (SCRAM) device in October 2021. The SCRAM device was removed on December 17, 2021, and mother tested positive for alcohol several days later. Mother denied having consumed alcohol and claimed to have no knowledge of how she could have tested positive. However, the tests were sent to the lab and the positive results were confirmed. The Agency recommended the juvenile court terminate mother's reunification services and set the matter for a section 366.26 hearing.

By May 2022, mother had been reinstated to drug court and her outpatient substance abuse treatment program, had completed a 52-week parenting program, and was testing negative for substances. Mother was having consistent unsupervised visits with the minor weekly without incident. The Agency changed its recommendation to continued reunification services for mother.

On May 19, 2022, the juvenile court inquired about the Agency's change in recommendation. The Agency explained that the original recommendation to terminate mother's services was because she "still denies the alcohol." However, mother had been clean since that recommendation and was receiving positive reports from her service providers, thus warranting the new recommendation to continue her services. The court ordered continued services for mother, noting her completion of many of the case plan components but admonishing her to "be on top of" the substance abuse problem and be fully committed to her recovery.

In July 2022, the Agency reported that mother completed individual counseling and reportedly gained insight into her behavior patterns. She remained engaged in drug court and random testing, attended Alcoholics Anonymous meetings, was compliant with her DUI court program, was completing her case plan, and was able to reunify with R.S. Mother's visits with the minor increased and included overnight visits. On July 21, 2022,

at the recommendation of the Agency, the juvenile court ordered the minor returned to the parents (who were living separately) with family maintenance services.

On September 15, 2022, the Agency informed the juvenile court that father had reported to the social worker that mother was intoxicated during a custody exchange in August 2022. Mother denied the claim. It was also reported that mother and R.S. engaged in a physical altercation during which mother was reportedly under the influence of alcohol. Mother denied the allegation and R.S. later denied mother was under the influence. Nonetheless, the Agency requested the court order random testing. When mother's counsel objected and argued mother had already completed drug court, the court stated, "The completion of a program does not ensure a hundred percent that someone is going to be clean and sober," and ordered that both parents test immediately. Both parents tested positive for tetrahydrocannabinol (THC).

Father argued he only used marijuana in small amounts when he was working, as prescribed by his doctor, and that the social worker had stopped by his home and "found no issues" with his marijuana use. The Agency informed the juvenile court that father had been terminated from drug court, but the Agency had no safety concerns with father. Mother acknowledged she made a mistake and was willing to do whatever the court ordered, including additional counseling, random testing, and outpatient treatment.

The juvenile court noted that father had not sufficiently demonstrated his ability to stop using marijuana as promised. The court also noted that while mother's willingness to address the marijuana issue was positive, there were also allegations of alcohol abuse, and the case would not get resolved until mother fully addressed that issue as well. The court expressed serious concern about the parents' ability to care for the minor and his siblings and stated it could not leave the minor in the care of the parents, who were not following the court's directions, adding, "I believe there's a safety issue if these children are remaining in the home." Finding that the continued placement of the children in the parents' respective homes was contrary to the children's welfare, the court ordered the

5

minor removed from both parents and directed the Agency to file a section 387 supplemental petition and initiate more counseling for mother to address the issue of substance abuse.

On September 16, 2022, the Agency filed a second supplemental petition (§ 387) on behalf of the minor. The petition alleged mother was intoxicated when she picked up the minor from father's home on August 19, 2022, she showed up "very drunk" to a visit on September 2, 2022, and urinated on herself, she became physically and verbally abusive toward R.S. on September 2, 2022, and she tested positive for THC on September 15, 2022. It was further alleged that father was terminated from drug court on August 5, 2022, after missing his appointments, he tested positive for marijuana on May 16, 2022, and he tested positive for THC on September 15, 2022.

At the detention hearing, over the parents' objections, the juvenile court reaffirmed its previous detention orders noting its continuing concerns about mother's use of both marijuana and alcohol, and further noting there were issues going on in mother's home that "rise to the risk level that . . . requires the Court to step in and remove these children." The court stated it would not consider returning the minor to father either until he re-engaged in drug court and demonstrated "a much stronger commitment" to the program. Thereafter, the court sustained the amended supplemental petition as to both parents.

By January 2023, mother was reportedly engaged in drug court, testing negative for any substances, and staying in communication with her drug court case manager and her counselor. Father had not been reinstated into drug court and had not addressed the court's concerns. The Agency stated it believed the minor could be safely returned to mother and recommended that the juvenile court order family maintenance services to her and no further services to father.

However, at the March 14, 2023, dispositional hearing, the Agency changed its recommendation as to mother due to two recent positive tests for alcohol while mother

6

was caring for the minor. The juvenile court continued the matter and, at the Agency's request, terminated mother's overnight and in-home visits with the minor, ordering visits at a supervised facility instead. In-home visits for father were also terminated.

The May 2023 supplemental disposition report stated that, while mother attempted to explain her two positive tests by stating she had "used a lot of body spray," the tests were confirmed positive for consumption of alcohol. The drug court case manager recommended mother enter inpatient treatment, but mother stated she was unable to do so because she had R.S. (then 16 years old) in her care. Mother's recent consumption of alcohol led the Agency to recommend no further services to mother.

The contested dispositional hearing was held on May 1 and May 8, 2023. The social worker testified that the minor was initially removed from mother in March 2021 due to mother's substance abuse, namely alcohol, and sustained allegations of her physical abuse of R.S. while under the influence of alcohol. The minor was thereafter removed from father due to his failure to protect the minor by leaving him in mother's care notwithstanding a safety plan prohibiting him from doing so.

The social worker testified that mother's drug of choice was alcohol, but she also had a history of marijuana use. Mother was referred to outpatient substance abuse treatment and drug and alcohol testing. Her initial case plan required her to complete a parenting program and individual counseling and participate in drug court and her probation program (which was the result of her June 2021 DUI conviction). The social worker testified that mother completed her outpatient treatment program, the Agency recommended and the juvenile court ordered, the return of the minor to mother with family maintenance services.

The social worker testified the minor was removed again in September 2022 pursuant to a section 387 supplemental petition alleging mother showed up at father's house intoxicated, drove off without a driver's license with the minor in the car, and tested positive for marijuana. Mother claimed the allegation was "a lie." The social

7

worker testified that mother tested positive for marijuana over the next several months, but denied using marijuana the latter two months and claimed those positive tests were the result of R.S. smoking marijuana in the house. The social worker testified that the Agency nonetheless recommended the return of the minor to mother with family maintenance services because marijuana was not mother's first drug of choice, mother was engaged in drug court even though she was testing positive, she was communicating with the drug court and the social worker, and the social worker believed mother was being honest about not using marijuana.

The social worker further testified that, in February 2023, R.S. reported that mother was "drunk or drinking again." Mother again denied any alcohol use but began missing testing appointments and was eventually fitted with a SCRAM device. The social worker testified that her initial recommendation that mother be given family maintenance services changed when mother's SCRAM monitor returned positive tests for alcohol on March 3 and 4, 2023, when mother was caring for the minor. When confronted, mother claimed the positive tests were the result of a body spray she used that contained alcohol. The social worker testified, however, that the body spray was taken into consideration when the test results were being read and confirmed for alcohol consumption.

The social worker testified that mother completed all the components of her case plan, but mother's consumption of alcohol was concerning to the Agency because her alcohol use was one of the main reasons for the minor's removal. Mother's continuing struggle with alcohol raised concerns that she could not properly care for the minor and that her behavior changed when she was under the influence, as evidenced by her physical abuse of R.S. The social worker testified that, there was not "a substantial probability" that the Agency could safely return the minor to mother's care by May 15, 2023, the 18-month statutory limit for services. The social worker further testified that it was not safe to return the minor to father because of father's lack of engagement in

8

services and his continued denial that his use of marijuana played a role in the minor's removal.

Father testified he did not know the circumstances involving mother that resulted in the removal of the minor but admitted that he left the minor in mother's care despite being instructed not to, resulting in the removal of the minor from his custody. Father further testified that, on August 19, 2022, mother came to his home to pick up the minor and began screaming and swearing at him before driving away with the minor. Father called the social worker to report the incident. He testified he was "pretty sure" mother was intoxicated because he knew how mother acted when she was intoxicated.

Mother testified she had a long history of substance abuse, that alcohol was her drug of choice, and that she also had a history of marijuana use. Mother admitted she relapsed several times during the R.S. matter in 2021, and that she had four prior DUI convictions, the most recent of which was in June 2021. She testified she graduated from drug court in July 2022 and the minor was returned to her care. She completed her case plan components and remained clean and sober through August 2022, denying she was under the influence of alcohol during the custody exchange on August 19, 2022. She testified the minor was removed again in September 2022 and the juvenile court ordered her to participate in drug court and random testing after she tested positive for marijuana.

Mother testified she tested positive for marijuana throughout the months of September, October, and November 2022, but she denied using marijuana during the latter two months claiming that the positive results were due to R.S. smoking marijuana in her home. When her driving privilege was suspended and she missed several random tests, she was fitted with the SCRAM device to monitor for substance use. Mother claimed the SCRAM monitor detected alcohol on March 3 and 4, 2023, because she had used a spray perfume that contained alcohol. She denied consuming alcohol on those days and stated she had worn a SCRAM monitor one or two years prior during the R.S.

9

dependency case and, in her experience, the SCRAM system would on occasion provide false positives from other products containing alcohol.

With respect to mother, the Agency argued, and the minor's counsel agreed, that there was a substantial danger to the minor if returned home and there was no reasonable means by which to protect the minor without removal. The Agency requested termination of reunification services arguing mother had exceeded the maximum time allowed by law for reunification services (more than 24 months), she was provided with reasonable services, and the reasons why the minor was first removed from mother—her physical assault of R.S. while under the influence of alcohol—still existed despite mother having completed nearly all her case plan. Notwithstanding mother's persistent struggle with alcohol and marijuana, and her DUI conviction in June 2021, she continued to deny any alcohol consumption and attempted to explain away the positive tests despite laboratory confirmation of those positive results. Finally, the Agency argued mother exhibited a willingness to make false statements to the Agency regarding her substance use and noncompliance with court orders, demonstrating there were no conditions of supervision that would guarantee the minor's safety in her care.

The juvenile court ordered the minor returned to father with family maintenance services. As to mother, the court acknowledged her periods of success in obtaining sobriety but noted her numerous relapses and the four DUI convictions. The court stated it did not find mother's testimony credible regarding her explanations for missed and positive tests. The court stated it agreed with the arguments put forth by the Agency and minors' counsel, found mother had a "serious substance abuse problem" and was "out of time" and was not able to reunify with the minor, terminated mother's reunification services, and adopted the Agency's recommended findings and orders. The court also confirmed there would not be a section 366.26 hearing as to the minor, who was being returned to the care and custody of father.

DISCUSSION

Mother contends there was insufficient evidence to support the juvenile court's dispositional order removing the minor from her custody. She claims there was no evidence to support a finding that the minor would be at substantial risk of harm, based on mother's substance abuse, if returned to mother's care or that there were no reasonable means to protect the minor short of removal. We disagree.

Section 361 provides, in pertinent part, that a dependent child "shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence. . . . [¶] There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . ." (§ 361, subd. (c)(1); *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332; accord, *In re I.R.* (2021) 61 Cal.App.5th 510, 520.) "A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462 [applying § 361, subd. (c) within the context of a § 387

11

removal].) When reviewing removal findings, " '[w]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard.' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239-1240, italics omitted; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1004-1005.)

Here, there was significant evidence that, despite having nearly completed her case plan components, mother still presented a substantial danger to the minor's safety. The minor was initially removed due to mother's physical abuse of R.S. while under the influence of alcohol. The minor's physical safety was at risk if mother were to become intoxicated and perpetrate physical abuse on the minor, and if father continued to allow mother to care for the minor contrary to the juvenile court's order in the R.S. dependency case.

In late 2021, mother was participating in outpatient substance abuse treatment but was terminated twice for testing positive or not testing. She admitted she relapsed several times. She was allowed to return to the program each time but failed to disclose that she had been convicted of DUI in June 2021. She wore a SCRAM device from October 2021 to mid-December 2021, but tested positive for alcohol just days after the device was removed. She denied having consumed alcohol or having any knowledge of how she could have tested positive. A lab confirmed the positive results.

The minor was returned to mother in July 2022, but removed just two months later after mother reportedly arrived intoxicated at the custody exchange at father's home. Father testified mother appeared and acted in a manner that caused him to believe she was intoxicated and then drove off with the minor inside the car. Mother also engaged in a physical altercation with R.S. while under the influence of alcohol. Again, mother claimed she had not consumed alcohol. Mother also tested positive for marijuana, but denied using the drug and claimed the positive tests were the result of R.S. smoking

marijuana in the house. The juvenile court did not find her claims or explanations credible.

Mother was engaged in drug court in January 2023; however, R.S. reported she was "drunk or drinking again" in February 2023, and by March 2023, she had tested positive twice for alcohol while she was caring for the minor. Laboratory tests confirmed the positive results. Mother again denied consuming alcohol and attempted to explain the positive tests by claiming she used body spray that contained alcohol and the SCRAM devices occasionally produced false positives. Again, the juvenile court did not find mother's explanations credible.

As the Agency aptly argued, and the juvenile court agreed, the reasons why the minor was first removed from mother—her physical assault of R.S. and her abuse of alcohol—still existed despite mother having virtually completed her case plan components. She was reportedly intoxicated when she drove off with the minor in her car, and she tested positive when she had the minor in her care. And, in the face of every one of the confirmed positive tests for either alcohol or marijuana, mother continued to deny use and attempted to explain away the positive results. The court did not find her denials or explanations credible, particularly in light of her long history of alcohol abuse, her various DUI convictions, and her refusals to acknowledge her use of alcohol and marijuana. Considering mother's past conduct and current circumstances, and her response to the conditions that gave rise to juvenile court intervention (*In re D.B., supra,* 26 Cal.App.5th at p. 332), there was sufficient evidence that there existed a substantial danger to the physical health, safety, protection, and physical or emotional well-being of the minor if the minor were returned to mother. (§ 361, subd. (c)(1); *In re Heather A., supra,* 52 Cal.App.4th at p. 193.)

There also was sufficient evidence that there were no reasonable means by which the minor's physical health could be protected without removing the minor from mother. As previously discussed, the minor was removed due to mother's physical abuse of R.S.

while under the influence of alcohol. Over the course of the two-year dependency, mother completed virtually all her case plan components, including outpatient substance abuse treatment. However, over that same period, mother tested positive for alcohol numerous times, was convicted of DUI, engaged in a physical altercation with R.S., and tested positive for marijuana. Mother ignored the juvenile court's order in the R.S. companion case and had the minor and his half sibling in her care. She did not disclose her 2021 DUI conviction even though she had been terminated from drug court and was being considered for re-entry into that program. She was not truthful with the Agency, the social worker, or the court when she denied using alcohol and marijuana, making excuses for her positive tests that did not comport with the facts and circumstances or with the laboratory confirmation of those tests. The juvenile court agreed with the Agency's argument that mother's "willingness to make false statements . . . concerning her substance use and her non-compliance with Court orders" created an environment in which there were no conditions of supervision that would reasonably guarantee the minor's safety in mother's care. (§ 361, subd. (c)(1).)

The juvenile court's dispositional orders removing the minor from mother's custody is supported by substantial evidence.

## DISPOSITION

The juvenile court's judgment is affirmed.

\s\ ,
Krause, Acting P. J.

We concur:

\s\ ,
Boulware Eurie, J.

\s\ ,
Ashworth, J.*

---

*     Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.