Filed 1/20/26  In re Xi.L. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Xi.L. et al., Persons Coming Under the Juvenile Court Law. | B344943 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.C.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP07882B-G) |

APPEAL from orders of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Jacob I. Olson, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Mother A.C. appeals from the juvenile court's March 12, 2025 dispositional orders removing her six youngest children, born between 2017 and January 2023, from her custody under Welfare and Institutions Code section 361[1] and requiring her to submit to a psychological evaluation under Evidence Code 730. We affirm the court's orders removing minors from mother's custody and dismiss as moot the portion of mother's appeal challenging the orders requiring her to undergo a psychiatric evaluation.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has a total of 12 children. The oldest six are no longer in her custody, but rather are either under a legal guardianship or in the custody of relatives. We use the term "minors" in this opinion to refer to mother's six youngest children, who are the only children at issue in this appeal. Five of the six minors share the same father, D.L., and the youngest, is the son of mother's boyfriend, S.S.

When the current case started, minors remained in mother's custody, under court supervision. The court sustained petition allegations that minors were at risk of harm based on S.S.'s acts of domestic violence against mother, and mother's failure to protect. The Department asked the court to order a mental health evaluation, along with other services, for mother. At the disposition hearing in February 2024, the court ordered family maintenance services, including parenting and individual

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

counseling, but denied the Department's request for a mental health evaluation.

In its status review report in advance of an August 2024 review hearing under section 364, the Department recommended terminating jurisdiction and giving mother sole legal custody. Mother's participation in services was mixed, family preservation services were ended due to mother not having time for services, and it was agreed that the family would benefit from a higher level of services, such as wraparound services. The social worker submitted a referral for mental health services, but mother refused, asking for community mental health services instead; when the social worker submitted a referral to a community mental health center and provided mother with the phone number, mother failed to contact the center. The review hearing was continued to November 1, 2024.

During the month of October 2024, the Department was working with mother on housing resources, and mother was potentially eligible for a program that would pay mother's full rent for one year before gradually transitioning mother to being responsible for paying her own rent.

In the interim, an incident on October 24, 2024 led the Department to file a subsequent petition under section 342 with new allegations against mother. Mother was arrested for child endangerment, and minors were detained on an emergency basis. The petition alleged that the children were dependents under section 300, subdivision (b), because mother transported the children in a vehicle without any child safety restraints or seats, and also took seven passengers in a car suitable for only five passengers. Further, mother made an inappropriate plan to have maternal grandmother, who was ill and incapable of controlling

minors, supervise them in the parking lot outside Men's Central Jail while mother went into the jail for an extended period of time. The maternal grandmother left minors alone, and law enforcement found them running around in the parking lot unsupervised. Deputies had to block off the parking lot to safely retrieve the children. Minors were dressed in dirty clothes and without shoes. These and additional allegations were later sustained by the juvenile court, and mother has not challenged the findings on appeal. At an arraignment hearing on October 30, 2024, the juvenile court ordered the children to remain detained and suitably placed.

While minors were placed outside of mother's home, either with a resource family or with a maternal aunt, concerns were raised about their poor hygiene, dental care, and medical care, as well as physical discipline by mother and sexual behaviors between the children. Assessments by service providers showed minors had multiple old scars, the eldest had asthma and eczema, and one of the younger children was diagnosed with a heart murmur. Two others were putting objects in their mouth, raising the possibility they had pica, an "eating disorder marked by a persistent feeling or craving that causes [the person] to eat things that have no nutritional value . . . ." <https://www.webmd.com/mental-health/mental-health-pica> [as of Jan. 16, 2026], archived at <https://perma.cc/RU96-SXDJ> In addition, according to one of the caregivers and a mental health team, mother discussed case progress with the children, telling them they would be coming home, but they needed "to stop telling these people all this stuff or you will never be able to come home with me." Mother secured housing and enrolled in a parenting program, but despite being provided with multiple referrals for

4

individual counseling, at a December 2024 child and family team meeting, mother reported individual counseling was not suitable for her needs.  The Department committed to supporting mother to locate suitable mental health services.

An amended petition added allegations under section 300, subdivisions (a), (b), and (j) that mother physically abused some of the children by "striking their head, buttocks, or shoulders with a sandal."

After hearing testimony from mother and three of the children at a contested adjudication hearing on January 31, 2025, the court sustained the section 342 petition allegations.  The disposition hearing took place on March 12, 2025, and after hearing argument, the court found by clear and convincing evidence that removal was warranted.  Mother objected to a dispositional order requiring her to undergo a psychological evaluation, and the court imposed the requirement over her objection.

## DISCUSSION

## A. Order Removing Minors from Mother's Custody

### 1. *Relevant law*

" 'At the dispositional hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to

5

protect the child's physical health without removing the child.' [Citations.]" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1065.) "The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) In deciding whether removal is necessary, the court "may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332.) The court "must also consider whether there are any reasonable protective measures and services that can be implemented to prevent the child's removal from the parent's physical custody." (*Ibid.*)

We apply a substantial evidence standard of review to the removal order, keeping in mind that the trial court must find clear and convincing evidence to support removal. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154–155.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

2. *Analysis*

There was ample evidence to support the court's removal order. Even before the events of October 24, 2024, the

6

Department had noted the family needed a higher level of services and mother had refused to engage in a mental health evaluation.  Mother's serious acts of neglect came to light on October 24, 2024, after she transported all six minors in a vehicle with no car seats and left them in the car with a sick and elderly maternal grandmother, who was admittedly incapable of caring for minors by herself, for at least four hours, placing them at imminent risk of physical harm.  Deputies reported that minors were running in the parking lot where cars were passing, and one child was almost hit by a passing car.  They also observed minors assaulting maternal grandmother by throwing objects at her and kicking her.  Additional deputies were called to assist moving the children to safety.  After their initial detention, minors continued to exhibit behaviors that demonstrated that they were at risk of harm if left in mother's custody, and mother instructed them to not divulge their circumstances because doing so would mean they would not be able to return to her.  Given the serious nature of the sustained allegations, we reject mother's argument that because she had taken a parenting class and obtained stable housing, a court could not find by clear and convincing evidence that the children would be at risk of harm unless they remained removed from mother's custody.

**B.    Disposition Order Requiring Mother to Undergo a Psychiatric Evaluation**

Mother contends the juvenile court abused its discretion when it ordered mother to undergo a psychological evaluation. The Department contends mother's challenge to the court's order is moot because the psychological evaluation has been completed,

and so this court cannot grant mother any effective relief.[2]  The Department also argues that the court's order was not an abuse of discretion.

1.  *Relevant law*

"A case becomes moot when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief." ' "  (*In re D.P.* (2023) 14 Cal.5th 266, 276.)  A reviewing court must " ' "decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding." ' "  (*Ibid.*)  Even where a case is moot, the court has discretion to reach the merits if the challenged order " 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or ' "could have other consequences for [the appellant], beyond jurisdiction." ' "  (*Id.* at p. 285.)  " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.  On appeal, this determination cannot be reversed absent a clear abuse of discretion.' [Citation.]"  (*In re A.E.* (2008) 168 Cal.App.4th 1, 4.)

---

[2] We have granted the Department's request for judicial notice asking this court to take judicial notice of a later Department report that mother had completed the psychological evaluation and the evaluation itself.

8

2. *Analysis*

After mother initiated this appeal, she completed the court-ordered psychological assessment.  In September 2025, the Department reported the results of the assessment to the juvenile court in a status review report.  According to the Department's report, the assessment "indicated that there is a concern with [mother's] ability to safely parent the minors, notable lack of accountability, efforts in reunification and the absence of social support."

We agree with the Department that subsequent events have rendered moot mother's appeal of the disposition order requiring her to undergo a psychological assessment, and we decline to exercise our discretion to review this moot argument on appeal.  (*In re D.P., supra,* 14 Cal.5th at pp. 286–87).  Since mother has already completed the assessment, even if we were to find error, a reversal cannot provide mother with any effective relief.

## DISPOSITION

The juvenile court's March 12, 2024 orders are affirmed.
NOT TO BE PUBLISHED.


                                        MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM (D.), J.